*Griner & Adams, W. C. Davis, J. K. Hines,* and *J. K. Jordan,* contra.

---

REAGAN, attorney, *v.* POWELL, superintendent.

Pending an appeal from the judgment of the ordinary, entered upon the return of a committee appointed under the provisions of the Civil Code, § 2573, to inquire whether a person alleged to be of unsound mind is a fit subject for commitment to the State Sanitarium, such person can not legally be confined in that institution unless a guardian for him has been duly appointed or his mental condition becomes such as to justify recourse to the summary proceeding authorized by section 2581 whenever a person without a guardian is violently insane or, for other good and sufficient reason, should not longer be left at large. An appeal by the person adjudged by the committee to be insane suspends the judgment of the ordinary ordering him to be committed to the State Sanitarium, and the superintendent thereof can not successfully rely upon the judgment as authorizing the confinement of the appellant in that institution whilst the appeal remains undisposed of in the superior court. Nor has the judge of that court, on the hearing of a habeas-corpus proceeding, brought in behalf of the appellant, any discretionary power to place him in the custody of that official or of any one else.

Submitted February 24,—Decided March 23, 1906.

Habeas corpus. Before Judge Lewis. Baldwin superior court. October 23, 1905.

Under regular proceedings instituted before and conducted by the ordinary of Henry county, for the purpose of inquiring into the sanity of I. R. Pair, he was adjudged to be a fit person to be committed to the State Sanitarium. An appeal to a jury in the superior court was entered in his name on July 14, 1905. Pending

appeal Pair was sent to and confined in the State Sanitarium, of which institution Dr. T. O. Powell is the superintendent. While Pair was being thus restrained of his liberty, a petition for habeas corpus, in the name of Frank Reagan, "attorney for I. R. Pair," was presented to the judge of the superior court, who passed an order directing that the writ prayed for should issue against Dr. Powell, in his capacity as superintendent of the State Sanitarium. In this petition, which recited the facts under which Pair had been restrained of his liberty, the applicant alleged that the detention of Pair pending his appeal was illegal, inasmuch as the entering of the appeal suspended the verdict and judgment rendered in the proceeding before the ordinary. The respondent filed no answer to the writ, but produced Pair and brought him before the superior court on the day set for the hearing. The facts stated in the petition for habeas corpus not being controverted, the applicant introduced no evidence other than a certified copy of the proceedings had before the ordinary, and the appeal which had been entered. No question concerning the right of the applicant, as attorney for I. R. Pair, to apply for the writ appears to have been raised. The presiding judge passed upon the merits of the case as presented by the petition and evidence submitted, deciding against the contention of the applicant that the entering of the appeal suspended the judgment of the ordinary, and for that reason Pair should be discharged pending the appeal. To this decision, as well as to the order of the court remanding Pair to the custody of the respondent, exception is taken.

*Frank Reagan,* for plaintiff. *E. M. Smith,* for defendant.

EVANS, J. (After stating the facts.) The Georgia State Sanitarium is a public institution sustained by the State for the care of such of its citizens as may have become bereft of reason, either temporarily or permanently. In the establishment and maintenance of this benign charitable institution, not only was the protection of the body politic from the violently insane considered, but a means was provided for the treatment by skilled physicians of persons whose unfortunate mental condition might be improved or cured under the facilities there afforded. Two methods of commitment to the asylum are provided for by statute. One is under section 2582 of the Civil Code, the other under section 2573. When an insane person has no guardian, or where the guardian of an

insane person fails or refuses, on notice, to confine his ward, any person may make oath that the insane person, for public safety or other good and sufficient reason, should not longer be left at large, and the ordinary is thereupon authorized to issue a warrant as in criminal cases for the arrest of such insane person and to have him brought before him (the ordinary) on a specified day. Upon an investigation of the facts, the ordinary may commit the insane person to the asylum, and, if necessary, cause him to be temporarily committed to jail until he can be removed to the asylum. This summary proceeding, which is authorized by the Civil Code, §2582, may be instituted before and conducted by the judge of the superior court, whenever the ordinary is absent from the county, or when he is unable to act, for any cause. Thus, so far as regards persons who may be violently or helplessly insane, a speedy mode of procedure is pointed out for placing them beyond the power of doing injury, either to the public or to themselves.

An altogether different procedure is pointed out by section 2573, to be observed whenever a person believed to be mentally unbalanced, though neither violent nor unable to look after his own immediate safety, is without a guardian. A formal petition, under oath and alleging either that he is "liable to have a guardian appointed" or that he is "subject to be committed" to the State Sanitarium, must be duly presented to the ordinary, who, "upon proof that ten days notice of such application has been given to the three nearest adult relatives of such person, or that there is no such relative within this State," is authorized to issue a commission directed to a specified number of disinterested and discreet persons, including a physician, who, after being duly sworn, shall "examine by inspection" the person whose sanity is questioned and hear testimony, if necessary, as to his mental condition, and who shall "make return of such examination and inquiry" to the ordinary, therein specifying whether or not it is proper to commit him to the asylum or appoint for him a guardian. Upon this return the ordinary may enter up an appropriate judgment, but it is by no means conclusive, either upon the party applying for the commission or upon the person alleged to be insane. Either may appeal to a jury in the superior court, the latter being allowed to do so in his own name, if capable, or through any friend or relative. Civil Code, §2575. If a guardian be appointed by the ordinary, he

"shall act as such pending the litigation." Ibid. In that event, not only will the guardian be authorized to take charge of the property of his ward until the issue is settled in the superior court, but the guardian is expressly authorized to confine his ward or place him in the asylum, if such a course is necessary either for his own protection or for the safety of others. Ibid. §2581. In case a guardian is not appointed by the ordinary, there is no provision of law for interfering with the liberty of the person believed to be insane, pending the ·appeal, notwithstanding the committee before which he was examined may have found that he was a fit person to be committed to the State Sanitarium. He is not under arrest pending his examination before the committee or pending the appeal, since authority to issue a warrant for his arrest is not conferred upon the ordinary. True, the statute declares that it is the duty of the committee "to examine by inspection the person for whom" guardianship or commitment to the asylum is sought, and it is therefore necessary that he should be brought before the committee for examination. The method of securing his presence is not specifically pointed out; but the ordinary, as the presiding officer of the court of inquisition, must necessarily have the implied power to summon him to appear, and, if he disobeys the mandate of the court, to resort to the usual means of enforcing compliance with its process. To compel the attendance of parties and witnesses upon the hearing is a power inherent in the court, and not one dependent upon authority expressly conferred by the words of the statute. At the same time, as the inquisition is a civil rather than a criminal proceeding, and the power to issue a warrant for the arrest of the person alleged to be insane seems to have been advisedly withheld from the ordinary, the former is not to be arbitrarily treated as an offender against the public, and, as such, subject to arrest and confinement, without the privilege of bail which is ordinarily given to the common criminal. Pending the initial investigation, and while the proceeding is before the superior court, the person whose sanity is in issue is to be regarded as an interested party to a civil case, unless his mental condition becomes such as to warrant recourse to the summary proceeding authorized by section 2582 of the Civil Code, above discussed.

In the present case, the petition presented to the ordinary alleged merely that I. R. Pair had recently become insane, and for that

reason he was a fit and proper subject to be committed to the asylum. The appointment of a guardian for him was not sought by the applicant, nor did the committee in its return find that the appointment of a guardian would be proper, nor did the ordinary assume to appoint a guardian. The order of the ordinary was that Pair should be committed to the asylum. As the superintendent of that institution, Dr. Powell did not become his guardian, and could not exercise the authority conferred by the Civil Code, §2581, upon duly appointed guardians of insane persons, respecting their confinement in the asylum or at some other suitable place of detention. The respondent to the writ of habeas corpus relies upon the order passed by the ordinary, as authority for depriving Pair of his liberty pending the appeal,—an order which does not undertake to appoint the respondent or any other person as the guardian of the person who entered the appeal. Such a guardian, and such a guardian only, would have a statutory right to assume control over the appellant pending his appeal to the superior court. The General Assembly recognized that a person whose sanity was questioned might, notwithstanding the return of the committee that he was insane, have sufficient mental capacity to attend to his own affairs and to be "dissatisfied with the return of the committee" and desirous of entering an appeal in his own name, and have the right to have it set aside. He was expressly given the right to enter such an appeal, and to thus appear before the superior court in the attitude of one mentally capable of conducting the case, rather than in the attitude of one who confessedly did not have sufficient capacity to do so, but had to rely upon some friend or relative to enter an appeal in his behalf. That he should be arbitrarily confined, pending the appeal, was not, it would seem, within legislative contemplation. The uncertainty as to his real mental condition might well warrant a restraint upon his right to manage his property, if he was possessed of means, yet would not necessarily justify the restraint of his liberty. The General Assembly contented itself with providing that in a case where a guardian was appointed, he should "act as such pending the litigation," and be under a positive duty of taking charge of the estate of his ward, but not of his person, unless such a course became necessary for his own protection or for the safety of others. The statute was so framed upon the assumption, doubtless, that the remedy pointed

out for cases of emergency would be followed whenever a person became violently insane, or for "other good and sufficient reason should not longer be left at large." The record before us does not disclose that there is any good and sufficient reason why Pair should be deprived of his personal liberty pending the appeal, or that any such reason has ever existed, or that any danger is to be apprehended unless he is confined. The judge of the superior court was, we think, without any discretion in the matter. The expression of a contrary view, appearing in the opinion of Mr. Justice Lamar in *Allen* v. *Barnwell,* 120 *Ga.* 539, was purely obiter; the person who was ordered into temporary custody of the respondent to the writ of habeas corpus did not complain of the order of the court, the excepting party being the respondent, and no question being raised by him as to the authority of the judge to exercise any such discretionary power. Had the law been observed in the present case, Pair would never have been sent to the State Sanitarium pending the appeal, and the judge of the superior court would certainly have no power to pass an order authorizing Pair to be placed in the custody of any one. The mere fact that Pair, in order to enforce his right to be released from the custody of the respondent, would have to submit himself to the jurisdiction of the superior court, would not confer upon the judge any discretionary power over his liberty and warrant an order remanding him into the custody of the respondent, upon the idea that it was to the best interest of Pair himself that he should be illegally restrained of his liberty. Even if he was supposed to be violently insane when brought before the superior court, the course to be pursued would be, when the fact was judicially ascertained that he was in illegal restraint, to call upon the *ordinary* (unless he was absent from the county or was for some other reason unable to act) to make "an investigation of the facts," and, if necessary, cause Pair to be temporarily committed to jail, until he could be committed to the State Sanitarium in the summary manner provided for by the statute. Civil Code, §2582. Unless the ordinary was unable to act in the matter, the judge of the superior court could not assume to take jurisdiction over the person of Pair and, without regard to the requirements of the statute, undertake to pass upon his mental state or to temporarily make him a prisoner. We do not understand that the presiding judge did assume to exercise any discretion in the mat-

ter.   On the contrary he held, in effect, that Pair was in the lawful custody of Dr. Powell, inasmuch as the appeal from the judgment of the ordinary did not suspend its operation.   We have reached a different conclusion.   The general rule of law in cases of appeal unquestionably is: "An appeal suspends but does not vacate judgment, and if dismissed or withdrawn, the rights of all the parties are the same as if no appeal had been entered."   Civil Code, § 4470.   There is, so far as we are informed, no exception to this general rule in cases of appeal from a judgment of the ordinary in the proceeding authorized by section 2573, save only when a guardian is appointed by the ordinary for the person adjudged to be insane.   The fact that an appeal by him is authorized is inconsistent with the idea that the general rule as to appeals should in no case apply.   Again, it is to be noted that whenever the insanity of a person is of such a character that he should not longer be left at large, provision is made that a warrant may issue, as in criminal cases, for his immediate arrest and confinement; no appeal lies from the judgment committing him to the asylum, and he must necessarily remain under the legal restraint put upon his liberty from the moment of his arrest, if, as is his right, he sues out a writ of certiorari to review that judgment.   Thus, the scheme of our law appears to be that if a person be subject to immediate arrest because of supposed insanity of an advanced stage and serious character, he may be at once apprehended and kept in custody whilst judicial inquiry is being made into his true mental state; but where there is no pretense that he is a person who should not longer remain at large and control his own movements, he is not to be arrested in the first instance nor restrained of his liberty pending a judicial investigation as to whether he should be sent to the State Sanitarium for necessary care and treatment, to be from thence discharged whenever his mental condition is such as will justify his release.   The return of the committee appointed to inquire into his sanity not being conclusive, but an appeal therefrom being expressly authorized, we fail to perceive why the usual incidents of an appeal from the judgment of an inferior judicatory should not be held to attach; and the appellant be left free to walk into, instead of being dragged into, the superior-court room when the case on appeal is there called for a hearing.

*Judgment reversed.   All the Justices concur.*