## 39362. WRIGHT v. THE STATE.

MARSHALL, Presiding Justice.

The appellant, Earl Kemp Wright, was convicted of the murder of Roy Mitchell, although the evidence shows that the triggerman was the appellant's brother, Joe Nathan Wright. The death penalty was not sought. Accordingly, the appellant was sentenced to life in prison. He was incarcerated after arrest until the trial. In this appeal, the appellant argues that private conversation was difficult, if not impossible, in the jailhouse facilities provided for pretrial conferences between the appellant and his attorney. Although we find ourselves in agreement with this argument, for reasons which follow we conclude that it does not provide a ground for reversal under the facts here.

On April 23, 1980, the appellant was charged with murder and placed in the Laurens County jail. Defense counsel was appointed to represent him between April 26 and May 1. It was subsequently reported in the local newspaper that attorney-client conference rooms in the county jail were equipped with electronic eavesdropping devices, and this created some degree of public controversy.

On June 27, the sheriff instituted a policy under which prisoners were to confer with their attorneys, not in the conference rooms, but in a small 3' x 6' cubicle in which they were separated by a steel and plexiglass partition. There is a plastic chair on each side of the partition, and below the partition on each side is a metal shelf that can be used to write on. The partition has two 4" vents to aid communication, but the vents are stuffed with a screen so that nothing can be passed through. The door on the prisoner's side of the cubicle is a cell-type door. Due to the jail's ventilation system, a stream of air is constantly flowing from the prisoner's side of the

cubicle, through the vent, and into the other side of the cubicle. As a result of this, communication within the cubicle can only be had by speaking very loudly, shouting, or screaming. Therefore, other prisoners and deputy sheriffs can overhear what is being said in the cubicle. In addition, the sound of other prisoners shouting and beating on the walls can also be heard within the cubicle.

On July 24, defense counsel filed a "motion to compel Sheriff W. R. (Rock) Bussell to provide reasonable conference facilities." However, no rule nisi was attached to this motion, and, therefore, no hearing on the motion was held. In any event, several days later, the trial judge informed defense counsel that it would be necessary to name the sheriff as a party, because the superior court had no jurisdiction over the sheriff concerning the jail facilities. Instead, on August 1, counsel filed an amended "motion to dismiss the charges against defendants or release them from jail on their own recognizance or in the alternative to compel the Sheriff of Laurens County to provide reasonable conference facilities." Again, no rule nisi was attached to the motion and the sheriff was not named as a party.

On September 25, a hearing was held on a motion to sever the appellant's trial from that of his co-defendant, Joe Nathan Wright. At this hearing, the superior court granted a motion asserted by the co-defendant's counsel to be allowed to confer with his client "at some place where I can sensibly and intelligently go over the case with him." Although this motion was granted, the appellant's counsel remained silent concerning the motions filed by him for reasonable conference facilities with the appellant.

The trial began on November 10, and counsel renewed the motions at the commencement of the trial. The trial judge stated: "As I recall I've advised you and other members of the Bar and I have afforded a number of members and had them brought and allowed conference here in the courtroom or in one of the jury rooms. So there's been no, of course there was a request back there originally but there's been no recent request that I know of for, to the Court for a conference with Mr. Wright. If there had been one, you would have certainly immediately [been?] afforded one." However, defense counsel stated that he had not been personally informed that he could come to the trial judge and ask that he be granted a room to talk to his client. In any event, the trial judge denied the motions on the ground that the sheriff had not been named a party, and, therefore, the court had no jurisdiction "to go into the question of jail facilities and in ordering a change in jail facilities."

Defense counsel then moved for a continuance. Although the trial judge denied the motion, he did give counsel an opportunity to

interview the appellant and a defense witness (Joe Nathan Wright) in a jury room between 5:00 p.m. and 7:00 p.m. that evening. The trial judge further stated that the case would be called for trial at 9:00 a.m. the next morning and defense counsel could interview the appellant at 8:00 a.m. in the jury room. Defense counsel interviewed the appellant during the time allowed, but at the commencement of the trial, he again moved for a continuance on the ground that the conference time had been inadequate and that there was not sufficient time to research the case and subpoena witnesses. The motion was denied.

The evidence introduced at trial shows that the appellant lived next door to his sister and brother-in-law, Eula Mae and Roy Mitchell, in East Dublin, Georgia. On Wednesday, April 23, 1980, the appellant's brother, Joe Nathan Wright (Nate), arrived in town for a visit. The appellant related to Nate prior difficulties he had had with Mitchell, and on Friday, April 25, Nate purchased a .25 calibre pistol.

The appellant, Nate, and others began drinking on Saturday, April 26. During the course of the day, the appellant stated that Mitchell had hit him on the head and that he was going to make Nate get Mitchell; that Nate could not go out that night because he knew what they had to do; and that "We'll get him." In addition, the appellant displayed the gun to several people. Later in the afternoon, Nate and the appellant came back to the appellant's house. By that time, the appellant had given the gun to Nate. The appellant went over to Mitchell's house; he came back and stated to Nate "Let's go over and get it over with him." Nate and the appellant then went to Mitchell's house. Passersby saw the appellant and heard him yell several times in the open front door, "Kill him." Gunshots were heard, and Nate was seen running out of the house carrying a gun. Mitchell was discovered lying in his house, dead from a gunshot wound. Nate and the appellant returned to the appellant's house approximately 10 minutes later. Nate told the appellant that he had nothing to worry about. The appellant responded, "No, because you shot him."

1. The following cases stand for the basic proposition that pretrial detainees are denied meaningful access to their counsel in violation of the Sixth Amendment if, in the facilities provided for attorney-client conferences, conversation is difficult and privacy is impossible. Keker v. Procunier, 398 FSupp. 756 (E. D. Calif. 1975); Adams v. Carlson, 488 F2d 619 (7th Cir. 1973); Collins v. Schoonfield, 344 FSupp. 257 (D. C. Md. 1972); Coplon v. United States, 191 F2d 749 (D. C. Cir. 1951); Ex Parte Snyder, 217 P. 777 (Cal. App. 1923). Here, as in the previously cited cases, the facilities provided by the prison for attorney-client conferences were partitioned rooms in

which the attorney and client, in order to engage in conversation at all, had to converse at a level loud enough to be overheard by other prisoners and prison employees.

2. However, the record in this case also shows that, for whatever reason, defense counsel did not obtain a pretrial hearing on the motions to be provided reasonable conference facilities with his client, although a pretrial hearing could have been obtained by attaching a rule nisi to the motions. And, at the motion-for-severance hearing approximately six weeks prior to trial, defense counsel observed the trial judge grant a similar motion asserted by counsel for appellant's co-defendant, and counsel for appellant did not raise the motions he had filed. This failure of defense counsel to invoke a ruling from the trial judge on his motions until immediately prior to trial could have been a simple lack of diligence, or it could have been a tactical decision to build error in what otherwise seemed to be a hopeless case. It is impossible to tell.

We, therefore, can not say that the trial judge erred in failing to grant the motions filed by defense counsel for reasonable conference facilities with his client or for a continuance.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 16, 1983.

*Richard T. Taylor, Karl M. Rice,* for appellant.
*Beverly B. Hayes, District Attorney, H. Jeff Lanier, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.