A07A1777. BROWN v. INCARCERATED PUBLIC DEFENDER CLIENTS DIVISION 3.
(655 SE2d 704)

PHIPPS, Judge.

Thomas Brown, the sheriff of DeKalb County, appeals an order of the Superior Court of DeKalb County directing the sheriff to transport DeKalb County jail inmates who are being represented by the DeKalb County Public Defenders Office (PDO) to the DeKalb County courthouse for pre-arraignment meetings with their attorneys. Brown contends that the order exceeded the court's authority and encroached on his own. We disagree and affirm.

For a number of years, the DeKalb County Sheriff's Office allowed the PDO to freely have "contact visits" (i.e., face-to-face interviews) with their clients in the DeKalb County jail. In September 2005, however, the sheriff's policy was changed to permit contact visits only if approved by the sheriff's staff and requested via e-mail 24 hours in advance. According to the sheriff, although contact visits for pre-trial meetings between attorneys and their inmate clients are needed, contact visits for pre-arraignment interviews are unnecessary and should not be allowed. Following that policy change, at the request of the PDO, the judge presiding over Division 3 of the Superior Court of DeKalb County began a practice of ordering inmates brought to the DeKalb County courthouse for pre-arraignment interviews with public defenders so that the meetings

could be face to face. In January 2007, the sheriff asked the presiding judge to stop that practice because of security problems in transporting inmates to the courthouse and in securing them during interviews. The court agreed to cease the practice until it could conduct an evidentiary hearing to determine whether the practice should continue.

In February 2007, the PDO filed a motion in Division 3 on behalf of all DeKalb County inmates scheduled for arraignment and trial calendars in that division and being represented by the PDO. In the motion, the PDO requested continuation of the court's practice of requiring the sheriff to transport its clients to the courthouse for pre-arraignment interviews, as well as expansion of the practice to include pre-trial interviews when requested by the PDO. The PDO requested this relief based on allegations that the provisions at the jail for attorney-client visits precluded the defendants from engaging in meaningful, private, and effective communication with their attorneys, thereby violating federal and state constitutional guarantees of assistance of counsel. A copy of this motion was served on the sheriff.

After conducting informal evidentiary hearings at which the sheriff appeared and was represented by counsel, the court entered an order finding a compelling need to have incarcerated defendants represented by the PDO brought to the courthouse for pre-arraignment interviews. In this regard, the court found that during their initial client interviews at the county jail, public defenders were required to communicate with often-times mentally ill or illiterate clients in attorney conference rooms or booths where they were separated from their clients by glass. The court additionally found that while these booths are equipped with a telephone used for communicating, and a slot for exchanging documents, the process that must take place is tedious and interferes with establishing rapport with a client who already feels as if the lawyer is not "really" representing him or her because the client did not select the lawyer; moreover, the rooms are so small that it is impossible for two people (e.g., counsel and an interpreter) to sit in them with the doors closed for needed confidentiality. Considering the amount of additional time this took public defenders to interview clients and the number of defendants being represented by the PDO in superior court, the court found that this arrangement resulted in an unacceptable interference and delay in the court's processes. Specifically, the court found that it hampers the public defenders' ability to effectively review evidence with their clients prior to arraignment so that the client can determine whether he or she wishes to plead guilty or not guilty at the all-important first appearance in superior court. The court also found the potential for the inmates to be denied effective assistance of

counsel, although it expressly stated that it was not basing its decision on that ground. The court recognized that the sheriff has responsibility for maintaining and overseeing courthouse security, and that transporting inmates to the courthouse for interviews with their attorneys presents legitimate security concerns. Balancing these considerations, the court ordered that county jail inmates represented by the PDO, other than those charged with "serious violent felonies" under OCGA § 17-10-6.1 or drug trafficking, continue to be brought to the courthouse for pre-arraignment interviews although not for trial calendars.

1. Brown contends that the court was without authority to enter the order granting the PDO's motion because the motion was not brought in any specific, pending civil or criminal case so that the PDO lacked standing to file the motion. We find no merit in this contention.

Every court has inherent power to "compel obedience to its judgments, orders, and process" and "[t]o control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto."[1] The order appealed here was entered to effectuate these purposes. In *Atlanta Newspapers v. Grimes*,[2] our Supreme Court affirmed such an order by one of the judges of the Superior Court of Fulton County with respect to all proceedings in his division, even though the order had not been entered in any pending case. It is undisputed that there are proceedings before the Superior Court of DeKalb County involving defendants who are inmates of the DeKalb County jail and who are being represented by the PDO. The sheriff does not dispute that the superior court had personal jurisdiction over him or that, before entry of the order, he was given adequate notice and opportunity to be heard. For these reasons, the court had authority to enter the order appealed and the PDO had standing to file the motion.

2. Brown contends that the court was not authorized to enter the order because, as held in *Morris v. Slappy*,[3] criminal defendants are not guaranteed the right to a meaningful attorney-client relationship.

In *Morris v. Slappy*, the attorney appointed to represent an indigent defendant was hospitalized shortly before trial. As a result, the defendant was represented at trial by another attorney. During the trial, the defendant complained that his new attorney was not prepared to try the case and moved for a continuance. Finding that

---

[1] OCGA § 15-1-3 (3), (4).
[2] 216 Ga. 74 (114 SE2d 421) (1960).
[3] 461 U. S. 1 (103 SC 1610, 75 LE2d 610) (1983).

the attorney was prepared, the trial court denied the motion. In habeas corpus proceedings, the federal appellate court found denial of the continuance to have been an abuse of discretion based on the defendant's Sixth Amendment right to be represented by the attorney with whom he had developed a meaningful relationship. Finding no such right, the Supreme Court of the United States reversed.

*Morris* thus limits an indigent criminal defendant's right to his choice of appointed counsel. *Morris* does not, however, contradict *Wright v. State*,[4] which recognizes "that pretrial detainees are denied meaningful access to their counsel in violation of the Sixth Amendment if, in the facilities provided for attorney-client conferences, conversation is difficult and privacy is impossible."[5] The order appealed safeguards that right so as to ensure that the defendants receive effective assistance of counsel at arraignment, a critical stage of the criminal prosecution. We find the order sustainable, on those grounds only.

3. Brown contends that the court usurped his authority as sheriff to provide security at the courthouse.

OCGA § 15-16-10 (a) (10), cited by Brown, makes it the duty of the sheriff "[t]o develop and implement a comprehensive plan for the security of the county courthouse. . . ." But the chief judge of the superior court of the circuit wherein the courthouse is located is empowered to review and modify the plan. The sheriff does not claim that the order appealed conflicts with the security plan for the DeKalb County courthouse. Moreover, a court can compel the attendance of witnesses and of the defendant at the proceedings it conducts.[6] And where the defendant's right to a fair trial is implicated, a court is obligated to supervise the implementation of courtroom security measures sought by the sheriff.[7] Here, the sheriff complains that the court's order will compromise his ability to provide courthouse security. But testimony given by the sheriff during the hearings below authorized the court to find that although "[a] lot of things [might] have to be reshuffled," the sheriff could "accommodate [the] new task." "In regulating and controlling the business of the court, wide discretion is necessarily placed in the judge, and the appellate courts should never interfere with the exercise of that discretion unless it is made to appear that wrong or oppression has resulted from its abuse."[8] We find no abuse here.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[4] 250 Ga. 570 (300 SE2d 147) (1983).

[5] Id. at 572 (1).

[6] *Reagan v. Powell*, 125 Ga. 89, 92 (53 SE 580) (1906).

[7] See, e.g., *Brown v. State*, 268 Ga. 354, 359 (7) (490 SE2d 75) (1997).

[8] *Kellar v. State*, 226 Ga. 432, 433 (4) (175 SE2d 654) (1970) (citation omitted).

DECIDED DECEMBER 13, 2007 — 

*Eugene C. Reed, Jr.*, for appellant.
*Kenneth D. Driggs, Gerard B. Kleinrock*, for appellee.