## S91A1428. SACANDY v. WALTHER et al.
### (413 SE2d 727)

HUNT, Justice.

Karen Sacandy, a Rome lawyer, brought this action against the superior court judges of the Rome Judicial Circuit, challenging the circuit's Indigent Defense Program. She sought a declaratory judgment that the Program was unlawful, and an injunction prohibiting the judges from requiring her to represent any individuals and from incarcerating her for her refusal to participate in the Program.

The Program receives state funding and was established under the Georgia Criminal Justice Act, OCGA § 17-12-1 et seq., the Georgia Indigent Defense Act, OCGA § 17-12-30 et seq. and the Guidelines for Local Indigent Defense Programs approved by this court at 246 Ga. 837 (1980) and amended in 1989. The Program provides indigent defense services through a panel of State Bar members[1] residing or maintaining offices in Floyd County, admitted to practice for less than 15 years,[2] as well as lawyers who request that their names be included in the panel. Appointed counsel are compensated under the Program in accordance with hourly rates published "from time to time" by the Superior Court of the Rome Judicial Circuit. In the event lawyers have not handled criminal defense matters, or believe they are not prepared to do so, the Program provides they

> . . . shall be appointed as uncompensated co-counsel in a sufficient number of criminal matters so that the attorney shall, when said attorney certifies that he or she is prepared to do so, assume active participation as sole defense counsel in in-

---

[1] Local governing committees, as defined in OCGA § 17-12-37 (b) may elect to provide indigent defense services through a public defender system, panel of private lawyers, a legal aid and defender society, a contract system or a combination of the foregoing to provide adequate legal defense for indigents accused of felonies or misdemeanors. Guidelines § 2.

[2] Whether limiting the panel to lawyers with less than 15 years experience conflicts with the Guidelines is not an issue here. The Guidelines provide, however, at § 2.4, that where the local committee elects, as here, to provide indigent defense services through a panel attorney program, appointment of attorneys and the assignment of cases should be made as follows:

(a) Appointments of private attorneys shall be made on an impartial and equitable basis;

(b) The cases shall be distributed among the attorneys to ensure balanced workloads through a rotation system;

(c) More difficult or complex cases shall be assigned to attorneys with sufficient levels of experience and competence to afford adequate representation;

(d) Less experienced attorneys should be assigned cases which are within their capabilities, but should be given the opportunity to expand their experience under supervision;

(e) Cases in which the death penalty is sought shall be assigned only to attorneys of sufficient experience, skill and competence to render effective assistance of counsel to defendants in such cases. . . .

See also Uniform Superior Court Rule 29.8.

digent criminal matters. . . .

Sacandy declined an appointment to represent a criminal defendant, stating she was unqualified to do so, and could not afford to serve as uncompensated co-counsel. The case was reassigned and Sacandy was not sanctioned.[3] The trial court rejected Sacandy's arguments that the Program was unconstitutional under the state and federal constitutions, denied her claims for injunctive and declaratory relief, and held that it was her professional obligation to serve as appointed counsel under the Program.

1. At the outset, we reject Sacandy's argument that the superior court judges are not authorized to appoint counsel. The judges of the superior courts, as officials charged with the duty of administering justice, have the inherent power to take action necessary to " 'efficiently and completely . . . discharge those duties. . . .' " *Wallace v. Wallace*, 225 Ga. 102, 111 (166 SE2d 718) (1969), citing *Lovett v. Sandersville R. Co.*, 199 Ga. 238 (33 SE2d 905) (1945); *Judicial Qualifications Comm. v. Lowenstein*, 252 Ga. 432, 433 (1) (314 SE2d 107) (1984). This power includes the ability to appoint counsel to represent indigent defendants, as was statutorily recognized in 1979 by the enactment of the Georgia Indigent Defense Act, OCGA §§ 17-12-30; 17-12-44.[4] *In re Straughan & Straughan*, 260 Ga. 821, 822, n. 2 (400 SE2d 906) (1991). We also find no merit to Sacandy's various arguments that the superior court judges' appointment of counsel under the Program involves those judges in violation of the doctrine of separation of powers.

2. We agree with Sacandy's contention that the Program is unenforceable insofar as it authorizes the appointment of counsel without any sort of compensation, even under limited circumstances.[5]

---

[3] Although the injunctive aspect of this appeal may be moot, we choose to reach the merits in light of the significant public interest in this challenge to the validity of an indigent defense program. See generally 5 AmJur2d 210, Appeal and Error, § 768. There is no question that the overwhelming need for constitutionally mandated indigent defense has presented a crisis in Georgia and throughout the country. See "Metro Lawyers Volunteer to Handle Indigent Cases," The Atlanta Constitution, January 10, 1992; "Strengthen Indigent Defense," editorial, The Atlanta Constitution, January 21, 1992; "Volunteers or Not, Tennessee Lawyers Help Poor," New York Times, January 17, 1992 ("With the court docket clogged, the public defender's office swamped, and the state's treasury depleted, every lawyer in the county [Knox] has been ordered to represent the poor at no charge."); Drecksel, The Crisis In Indigent Defense, 44 Ark. L. Rev. 363, 408 (1991).

[4] OCGA § 17-12-44 provides:
This article expressly recognizes the inherent power of the court to appoint counsel to represent indigent defendants and to order compensation and reimbursement from county funds in individual cases as the proper administration of justice may require.

[5] It makes no difference that the only appointed lawyers not to receive compensation are those who have not handled criminal defense matters or believe themselves unprepared to do so, and that those lawyers serve as co-counsel rather than sole defense counsel, since they

. . . [T]he law of this state has, since 1953, mandated local compensation for counsel appointed in capital felony cases, Ga. L. 1953, Nov.-Dec. Sess., p. 478; OCGA § 17-12-60 et seq., and since 1968, in all indigent cases, Ga. L. 1968, p. 999, as amended, Ga. L. 1974, p. 1100; OCGA § 17-12-1 et seq. In addition, a state-funded program, the Georgia Indigent Defense Act, was enacted in 1979, Ga. L. 1979, p. 367; OCGA § 17-12-30 et seq., declaring:

[i]t is the policy of this state to provide the constitutional guarantees of the right to counsel and equal access to the courts to all its citizens in criminal cases and to provide: . . .

(2) Adequate compensation for counsel who represent indigent persons accused of crime; . . .

*Birt v. State,* 259 Ga. 800 (387 SE2d 879) (1990).[6] See also § 2.6 Guidelines.

3. Sacandy argues that she should not be required to participate in the Program because she has no experience nor interest in criminal defense. She thus raises the difficult issue of the competence required of lawyers appointed under an indigent defense program. DR 6-101 (A) of the Code of Professional Responsibility provides that: "A lawyer shall not: (A) (1) Handle a legal matter which he knows or should know that he is not competent to handle. . . ."

The first Ethical Consideration accompanying Canon 6 provides:

Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle.[7]

---

are, nevertheless, *appointed* to serve for the defense.

[6] Thus, we are relieved from entering the intense debate over whether the imposition on lawyers of an enforceable obligation to perform criminal defense services, or any other legal services, violates the equal protection and due process provisions of our state and federal constitutions, as well as the Thirteenth Amendment's prohibition against involuntary servitude, or is otherwise immoral or imprudent. See generally Comment, Constitutional Challenge to Court Appointments: Increasing Recognition Of An Unfair Burden, 44 S.W.L.J. 1229 (1990); *State ex rel. Stephan v. Smith,* 747 P2d 816, 837-842 (Kan. 1987); Shapiro, The Enigma of the Lawyer's Duty to Serve, 55 N.Y.U. L. Rev. 735 (1980).

[7] See also Georgia State Bar Rule 8-104 (D) regarding the requirements for participation in litigation for all attorneys admitted to practice after January 1, 1988. Those attorneys may not appear as sole or lead counsel in the superior or state courts of this state in any contested civil case or in the trial of a criminal case until after the attorney has obtained nine "litigation experiences," as set forth in the rule.

The Guidelines specifically provide that a local panel program, such as Rome's, shall include only competent lawyers as panel attorneys (§ 3.2).[8] It is clear that the superior court judges are restricted to appointing competent lawyers to represent indigent defendants. This is not to suggest that extended experience in criminal matters is a prerequisite for competence in all criminal cases. Certainly lawyers without such experience are competent to handle some criminal matters in their entirety, and to assist in others.[9] Also, lawyers may take steps to become more competent in criminal defense, and, in light of the current crisis in indigent defense, we applaud local bar efforts to assist in broadening the availability of competent defense counsel through "mentoring," and other programs.[10] However, we reject Sacandy's argument that lack of interest in criminal matters equates to incompetence, or otherwise excludes a lawyer from participation in the Program.

There is no evidence of the retention of incompetent counsel under the Program. Indeed, it appears the trial court may have accepted Sacandy's argument that she was not competent to represent the defendant to whom she had been appointed as counsel, and excused her for that reason.

4. We find no merit in Sacandy's remaining enumerations.

*Judgment affirmed in part; reversed in part. Clarke, C. J., Weltner, P. J., Bell, Benham and Fletcher, JJ., concur.*

CLARKE, Chief Justice, concurring.

This opinion in no way impedes the right and opportunity of lawyers competent to try criminal cases to volunteer service without compensation. In fact, I applaud the professionalism of those lawyers who participate in the Atlanta One Thousand Lawyers for Justice project. I hope this activity will spread around the state.

I also point out that nothing in this opinion prevents an inexperienced lawyer from serving as a volunteer co-counsel without compensation.

---

[8] Rome's program makes an attempt to insure competence by its provision that lawyers inexperienced in criminal work serve as appointed, uncompensated co-counsel. We understand the circuit's intent to broaden the availability of competent counsel. However, as noted above, counsel may not be appointed in any capacity without adequate compensation.

[9] In certain cases, such as death penalty cases, it would be permissible, as well as prudent, for a trial judge to appoint inexperienced counsel (who would be competent to assist in some aspects of the defense) in addition to experienced counsel, to represent an indigent defendant. This would be particularly appropriate in death penalty cases. See *Davis v. State*, 261 Ga. 221, 223, n. 2 (403 SE2d 800) (1991) (Hunt, J., concurring in part and dissenting in part).

[10] See "Metro Lawyers Volunteer to Handle Indigent Cases," supra at n. 3.

*Karen L. Sacandy,* pro se.

*Michael J. Bowers,* Attorney General, *Mark H. Cohen, Beverly B. Martin,* Senior Assistant Attorneys General, for appellees.