S01A0464. AT&T CORPORATION et al. v. SIGALA et al.
S01A0465. AT&T CORPORATION et al. v. PEREZ et al.
(549 SE2d 373)

FLETCHER, Chief Justice.

Cruz Sigala, Ligia Pacheco de Perez and other citizens of the Republic of Venezuela filed these wrongful death and personal injury actions against AT&T Corporation and its Atlanta employees as a result of a 1993 gas pipeline explosion in Venezuela. The defendants moved to dismiss on the basis of forum non conveniens, which the trial court denied due to the absence of statutory authority. We granted AT&T's petition for certiorari to consider whether a Georgia trial court has the inherent authority to dismiss a lawsuit that nonresident aliens bring for injuries occurring on foreign soil. Following the majority of states, we adopt the doctrine of forum non conveniens and hold that Georgia courts may exercise their inherent power and dismiss cases involving nonresident aliens when an adequate alternative forum exists and dismissal serves the interests of justice and convenience of the parties. Therefore, we reverse.

## FACTS

A gas pipeline ruptured in Tejerias, Venezuela when a rotoexcavator machine struck the line while digging a trench for a fiber-optic telephone cable. The explosion and resulting fire killed 50 people and injured many others. The Venezuelan plaintiffs filed ten other actions in the federal and state courts of California, Connecticut, Florida, Georgia, Illinois, and New Jersey. AT&T removed this action from the State Court of Fulton County to the U.S. District Court for the Northern District of Georgia, which denied the plaintiffs' motion to remand and granted AT&T's motion to dismiss based on the doctrine of forum non conveniens.[1] The U.S. Court of Appeals for the Eleventh Circuit reversed because of the lack of federal jurisdiction.[2]

On remand, the state court weighed the relevant factors identified in *Gulf Oil Corporation v. Gilbert*,[3] concluding that there was an adequate alternative forum and public and private interests supported dismissing the action in favor of the courts of Venezuela. Despite this conclusion, the state court denied AT&T's motion to dismiss because Georgia does not have a statute giving trial courts the discretion to decline to exercise jurisdiction under the doctrine of forum non conveniens. After the Court of Appeals for the State of

---

[1] See *Pacheco de Perez v. AT&T Co.*, No. 1:95-cv-2749-FMH (N.D. Ga. May 31, 1996).

[2] See *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368 (11th Cir. 1998).

[3] 330 U. S. 501 (67 SC 839, 91 LE 1055) (1947).

Georgia denied AT&T's application for interlocutory appeal, we granted certiorari.

## FORUM NON CONVENIENS

The common-law doctrine of forum non conveniens is an equitable principle by which "a court having jurisdiction may decline to exercise it on considerations of convenience, efficiency, and justice."[4] Under federal case law, a district court has the discretion to dismiss a lawsuit when there is an adequate alternative forum in a foreign court and dismissal best serves the convenience of the parties and the ends of justice.[5] The U.S. Supreme Court has identified relevant public and private interests to be considered in determining whether the plaintiff's choice of forum should be honored.[6] The private interests include the relative ease of access to sources of proof, the relative availability of compulsory process to secure the attendance of witnesses, the cost of obtaining willing witnesses, the need to view the premises, the ability to enforce judgments, and other factors that make a trial expeditious and inexpensive.[7] When courts are required to adjudicate disputes that have little connection to the chosen forum, the public interest factors include issues involving court congestion, jury duty, and choice of law.

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. . . . There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.[8]

Since the enactment of federal statutes permitting transfers between federal judicial districts, the doctrine applies in federal courts primarily when the alternative forum is a foreign court.[9]

---

[4] *Atlantic Coast Line R.R. Co. v. Pope*, 209 Ga. 187 (71 SE2d 243) (1952), rev'd on other grounds, 345 U. S. 379 (73 SC 749, 97 LE 1094) (1953).
[5] See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 84 (1971). See generally 17 MOORE'S FEDERAL PRACTICE §§ 111.70 - 111.95 (3d ed. 2001).
[6] See *Gulf Oil Corp.*, 330 U. S. at 508.
[7] See id.
[8] Id.
[9] See 17 MOORE'S FEDERAL PRACTICE § 111.01.

Even though the common-law doctrine originated in the state courts,[10] the vast majority of states now follow a standard similar to the federal rule.[11] These states permit their courts to refuse to exercise jurisdiction when the interests of justice and the convenience of the parties justify dismissal.[12] Most states have relied on their courts' inherent judicial power in adopting the doctrine, although a few states have enacted statutes with a forum non conveniens provision.[13]

## ADOPTION OF FORUM NON CONVENIENS UNDER GEORGIA LAW

This Court has the inherent power "to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner."[14] Like our sister states, we exercise our inherent power only when established methods do not address a situation[15] and courts are compelled to provide solutions that enable the litigative process to proceed smoothly.[16]

Relying on our inherent judicial power, we adopt the doctrine of forum non conveniens for use in lawsuits brought in our state courts by nonresident aliens who suffer injuries outside this country. First, we think trial courts should have the discretion to determine whether a tort action should remain on their dockets when it involves foreign plaintiffs. Unlike the previous cases where we have declined to apply the doctrine, this case does not involve a resident or citizen of Georgia or another state.[17] Second, adoption of the doctrine

---

[10] See *Gulf Oil*, 330 U. S. at 505 n.4.

[11] See Jacques E. Soiret, *The Foreign Defendant: Overview of Principles Governing Jurisdiction, Venue, Extraterritorial Service of Process and Extraterritorial Discovery in U.S. Courts*, 28 TORT & INS. L.J. 533, 562 (1993).

[12] See, e.g., *Picketts v. International Playtex, Inc.*, 576 A2d 518, 524 (Conn. 1990); *Kinney Sys. v. Continental Ins. Co.*, 674 So2d 86, 87 (Fla. 1996); *McClain v. Ill. Cent. Gulf R.R. Co.*, 520 NE2d 368, 372 (Ill. 1988); *Gonzales v. Atchison, Topeka & Santa Fe Ry. Co.*, 371 P2d 193, 196 (Kan. 1962); *Beaven v. McAnulty*, 980 SW2d 284 (Ky. 1998); *Johnson v. G.D. Searle & Co.*, 552 A2d 29, 30 (Md. 1989); *Missouri Pac. R.R. v. Tircuit*, 554 So2d 878 (Miss.1989); *Gore v. United States Steel Corp.*, 104 A2d 670 (N.J. 1954); *Silver v. Great Am. Ins. Co.*, 278 NE2d 619, 621 (N.Y. 1972); *Chambers v. Merrell-Dow Pharm.*, 519 NE2d 370, 371 (Ohio 1988); *Braten Apparel Corp. v. Bankers Trust Co.*, 259 SE2d 110, 113 (S.C. 1979); *Zurick v. Inman*, 426 SW2d 767, 768 (Tenn. 1968); *Norfolk & W. Ry. Co. v. Tsapis*, 400 SE2d 239, 242 (W. Va. 1990).

[13] See *Chambers*, 519 NE2d at 372 n. 3 (listing 33 jurisdictions that had adopted the common-law rule through case law compared to six states that had enacted the doctrine by statute or rule as of 1988); see also OCGA § 19-9-47 (applying forum non conveniens doctrine as part of Uniform Child Custody Jurisdiction Act).

[14] *Garcia v. Miller*, 261 Ga. 531, 532 (408 SE2d 97) (1991).

[15] See *McCorkle v. Judges of Superior Court*, 260 Ga. 315, 317 n.1 (392 SE2d 707) (1990) (Hunt, J., concurring).

[16] See *State v. Buckner*, 527 SE2d 307 (N.C. 2000).

[17] See *Brown v. Seaboard Coast Line R.R. Co.*, 229 Ga. 481, 482 (192 SE2d 382) (1972)

permits our state courts to preserve their limited judicial resources to resolve controversies that have a reasonable connection to their jurisdiction. Third, adopting the doctrine places this state in line with both the federal courts and the majority of the states and thus discourages foreign plaintiffs from suing in Georgia courts to litigate their tort claims in an American court.[18] As the U.S. Supreme Court has noted, the courts in our country are attractive to foreign plaintiffs because most states offer strict liability, jury trials are available, discovery is more extensive, contingent attorney's fees are allowed, and losing parties are not taxed the costs of their opponents' attorney's fees.[19]

In adopting this doctrine, we reject the plaintiffs' argument that the Georgia statutes concerning the rights of aliens gives Venezuelan citizens an equal right of access to our state courts.[20] Neither the United States Constitution nor the Georgia Constitution guarantees the same protections to aliens living outside this country that it gives citizens and aliens living within the borders of the United States.[21] The Supreme Court has explained that it is the alien's presence within the territorial jurisdiction of the United States that gives the judiciary the power to extend constitutional protections beyond citizens to aliens.[22] Given the importance of an alien's presence as a resident within this country to invoke the rights guaranteed to citizens, we conclude that OCGA §§ 1-2-10 and 1-2-11 apply to citizens of foreign countries who are residing within the United States and do not extend to nonresident aliens.

We also conclude that our recent decisions addressing the doctrine of forum non conveniens under the Uniform Child Custody Jurisdiction Act do not prevent us from exercising our inherent powers here.[23] Unlike the Venezuelan citizens who brought these actions, the parties in those cases had an unqualified right under our constitution or federal statutes to litigate their claims in the courts of this

---

(privileges and immunities clause of U.S. Constitution prohibits Georgia courts from applying forum non conveniens doctrine to nonresident citizens of other states in cases under Federal Employers' Liability Act, which has a special venue provision); see also *Atlantic Coast Line R.R. Co. v. Wiggins*, 77 Ga. App. 756, 759-760 (49 SE2d 909) (1948) (refusing to apply doctrine to Georgia resident).

[18] See *Kinney*, 674 So2d at 87-89 ("Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests.").

[19] See *Piper Aircraft Co. v. Reyno*, 454 U. S. 235, 252 n. 18 (102 SC 252, 70 LE2d 419) (1981).

[20] See OCGA § 1-2-10 (rights of citizens of other nations to sue); OCGA § 1-2-11 (rights of aliens generally).

[21] See *Barge-Wagener Constr. Co. v. Morales*, 263 Ga. 190, 192 (429 SE2d 671) (1993).

[22] See *Johnson v. Eisentrager*, 339 U. S. 763, 770 (70 SC 936, 94 LE2d 1255) (1950).

[23] See *Patterson v. Patterson*, 271 Ga. 306 (519 SE2d 438) (1999); *Holtsclaw v. Holtsclaw*, 269 Ga. 163 (496 SE2d 262) (1998).

state.[24] Although specific statutes codifying the doctrine will prevail over the common law, the absence of a statute generally permitting dismissal based on forum non conveniens does not prohibit us from adopting the doctrine in this international tort action. Because the trial court found that it lacked the inherent power to dismiss these cases under the doctrine of forum non conveniens, we reverse.

*Judgment reversed. All the Justices concur, except Benham and Carley, JJ., who dissent.*

BENHAM, Justice, dissenting.

Despite this Court's holding in *McCorkle v. Judges of Superior Court of Chatham County*, 260 Ga. 315, 316 (392 SE2d 707) (1990), that "[t]he inherent power is not a sword but a shield," the majority opinion in this case uses that power to pare away the constitutional and statutory jurisdiction of Georgia trial courts and to cut off from access to our courts persons who are entitled by statute to sue and be sued in this State. Because I believe that adoption of the doctrine of forum non conveniens is not a proper subject for the exercise of the inherent power of Georgia courts, I must dissent.

The inherent power of the judiciary is conferred on it by the State, and " 'must be found in, and derived from the law of the land, and also be exercised in the mode and manner that the law prescribes.' [Cit.]" *Grimmett v. Barnwell*, 184 Ga. 461 (1) (192 SE 191) (1937). The "law of the land" from which the judiciary of this State derives its inherent powers is our Constitution, which "invests those officials charged with the duty of administering justice according to law with all necessary authority to efficiently and completely discharge those duties the performance of which is by the constitution committed to the judiciary, and to maintain the dignity and independence of the courts." *Lovett v. Sandersville R. Co.*, 199 Ga. 238, 239 (33 SE2d 905) (1945).

In the past, those powers have been used by trial courts "to preserve and enforce order and compel obedience to its judgments and orders, to control the conduct of its officers and all other persons connected with the judicial proceedings before it and to inflict summary punishment for contempt upon any person failing and refusing to obey any lawful order of such court." *Jackson v. State*, 225 Ga. 553 (4) (170 SE2d 281) (1969). Specifically, we have recognized that trial courts have the power to adopt case assignment methods *(Lumpkin v.*

---

[24] See *Early v. Early*, 269 Ga. 415 (499 SE2d 329) (1998) (federal statutes placed exclusive jurisdiction of a child support modification action in Georgia); *Holtsclaw*, 269 Ga. at 165 (constitution gives husband the right to litigate his divorce action in the county of his residence); see also *Patterson*, 271 Ga. at 308 (trial court must determine whether Georgia is inconvenient forum for resident husband in child custody action under OCGA § 19-9-47 (a)).

*Johnson*, 270 Ga. 392 (1) (509 SE2d 621) (1998)); to appoint counsel to represent indigent defendants (*Sacandy v. Walther*, 262 Ga. 11 (1) (413 SE2d 727) (1992)); to close the courtroom during a trial (*Waller v. State*, 251 Ga. 124 (4) (303 SE2d 437) (1983)); to punish for contempt (*Jackson v. State*, supra); to correct errors in records (*Chase v. Bartlett*, 176 Ga. 40 (2) (166 SE 832) (1932)); to replace lost records (*Teasley v. Nelson*, 164 Ga. 242, 247 (138 SE 72) (1927)); to amend and modify judgments during the term of rendition (*Chero-Cola Bottling Co. v. Southern Exp. Co.*, 150 Ga. 430, 434 (104 SE 233) (1920)); to compel the attendance of parties and witnesses (*Reagan v. Powell*, 125 Ga. 89, 92 (53 SE 580) (1906)); and to adjourn from day to day (*Cribb v. State*, 118 Ga. 316, 317 (45 SE 396) (1903)).

Those uses of inherent powers comport with the holding in *Waldrip v. Head*, 272 Ga. 572 (1) (532 SE2d 380) (2000): " 'A court uses its inherent power when constitutional provisions, statutes, or court rules fail to supply answers to problems or when courts find themselves compelled to provide solutions that enable the litigative process to proceed smoothly.' [Cit.]" However, the use of inherent power recognized by the majority in this case does not fit within the framework set forth in *Waldrip* because there are constitutional and statutory provisions which supply all the answers needed in this case.

For the superior courts, jurisdiction is established by our Constitution: "The superior courts shall have jurisdiction in all cases, except as otherwise provided in this Constitution." Art. VI, Sec. IV, Par. I, Ga. Const. 1983. There is no provision otherwise in the Constitution that permits our superior courts to divest themselves of the jurisdiction granted them by the Constitution. In fact, this Court has held repeatedly and recently that the superior courts lack the power to give up the jurisdiction thus granted to them. "[T]he courts of Georgia have no inherent authority to decline to exercise the jurisdiction otherwise granted by our constitution. . . ." *Holtsclaw v. Holtsclaw*, 269 Ga. 163 (496 SE2d 262) (1998). "[T]he constitution has vested all the judicial power in the courts of the State, and . . . neither the Legislature nor a judge, nor the judges of a superior court have authority to limit or expand the jurisdiction and authority of a superior court." *Fulton County v. Woodside*, 222 Ga. 90, 100 (149 SE2d 140) (1966). See also *Patterson v. Patterson*, 271 Ga. 306 (1) (519 SE2d 438) (1999); *Early v. Early*, 269 Ga. 415, 418 (499 SE2d 329) (1998). Because the Constitution establishes the jurisdiction of our superior courts and by its terms permits no exceptions to that jurisdiction other than by the Constitution itself (Art. VI, Sec. IV, Par. I, Ga. Const. 1983), adoption of the doctrine of forum non conveniens by this Court and application of the doctrine by the superior courts is beyond the reach of the inherent powers of the courts.

For state courts, it is statutory law which puts their jurisdiction

beyond the reach of the inherent power of the courts. The General Assembly is empowered by the Constitution to define the jurisdiction of the state courts (Ga. Const. 1983, Art. VI, Sec. III, Par. I), and has exercised that power in OCGA § 5-7-4. Since the inherent power of the courts is to be used in furtherance of "those duties the performance of which is by the constitution committed to the judiciary" (*Lovett v. Sandersville R. Co.*, supra), and since the Constitution assigns the duty of determining the scope of the state courts' jurisdiction to the legislative branch, not the judicial branch, it follows that the inherent power of the courts cannot be used to divest the state courts of the jurisdiction assigned them by the legislature.

Limiting the operation of the doctrine to cases brought by non-resident aliens does not bring the abrogation of the constitutional grant of jurisdiction within the scope of our inherent power. The constitutional and statutory grants of jurisdiction to the trial courts permit no exception not contained therein, and neither the Constitution nor OCGA § 5-7-4 contains an exception for non-resident aliens. Indeed, citizens of other countries are guaranteed access to our courts by OCGA §§ 1-2-10 & 1-2-11. Nothing in either of those code sections distinguishes between resident and non-resident aliens or authorizes the distinction drawn between those groups by the majority opinion. I believe that to do so here is inappropriate as a matter of policy. When this Court, in 1993, rejected an argument that a statute which relegated most non-residents to an inferior legal position was unconstitutional (*Barge-Wagener Constr. Co. v. Morales*, 263 Ga. 190 (429 SE2d 671) (1993)), the General Assembly struck that provision from the statute. Ga. Laws 1995, pp. 642, 648. When considering the policy statement implicit in that legislative action together with the plain language of OCGA §§ 1-2-10 & 1-2-11, I find it unmistakable that a plaintiff's status as a non-resident alien does not warrant a change in the constitutionally and statutorily established jurisdiction of our trial courts.

Were the trial courts of this State to be given the authority to dismiss cases on the ground of forum non conveniens, the legislative branch of government is the more appropriate source of that authority. The General Assembly is better-equipped for conducting hearings and studies to determine whether, in fact, our courts are experiencing the congestion the majority cites as a reason for adopting the doctrine. Indeed, the General Assembly has considered legislation enacting the doctrine, but has chosen not to do so. Of course, as this Court unanimously held in *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57 (2) (484 SE2d 653) (1997), the legislature's "refusal to legislate in this regard does not open the door for the courts of this state to make law." That this Court is not properly prepared to make this decision is reflected in the lack of guidance given the trial courts in the majority

opinion. Rather than establish guidelines based on a consideration of the current needs of our population and our judiciary, the majority has merely parroted a set of considerations mentioned by the U.S. Supreme Court more than 50 years ago. Our court system is not the same as the federal system, and if the trial courts are to be given the power to apply the doctrine of forum non conveniens, they should also be given guidelines for the use of the doctrine, guidelines specific to the courts of Georgia. Furthermore, the majority has mentioned the considerations stated by the U.S. Supreme Court, but has not sought to apply them to this case. For instance, there are substantial questions in this case regarding the availability of an adequate forum in Venezuela and the involvement of the Georgia defendants in the project which resulted in the tragic deaths from which this case arises, but the majority does not address those issues at all.

The majority's hasty adoption of the doctrine of forum non conveniens deprives the bench and bar and all litigants who would use Georgia courts of the stability, predictability, and certainty that are the necessary hallmarks of an effective court system. Precedent has no value if it is ignored, as the majority has done with this Court's decisions in *Patterson v. Patterson*, supra, and *Holtsclaw v. Holtsclaw*, supra. The bench and bar and those who make decisions regarding the commencement of litigation have been entitled to rely on the unequivocal statement in those cases that trial courts lack the inherent power to dismiss cases under the doctrine of forum non conveniens: "The courts of Georgia have no inherent authority to decline to exercise their jurisdiction. . . ." *Patterson v. Patterson*, supra; "[T]he courts of Georgia have no inherent authority to decline to exercise the jurisdiction otherwise granted by our constitution. . . ." *Holtsclaw v. Holtsclaw*, supra. Without disavowing or even acknowledging the absolute nature of the language in those decisions, the majority has deprived judges, lawyers, and litigants of that reliance by suggesting the holding applies only when the parties have an unqualified right to litigate in our courts, and by misconstruing OCGA §§ 1-2-10 & 1-2-11, as discussed above, to hold that Venezuelans do not have such a right of access.

In this Court's rush to adopt the doctrine of forum non conveniens, insufficient consideration has been given to the effects the ruling may have on the law and on business interests in Georgia. For instance, since the majority opinion labels the doctrine of forum non conveniens as an equitable principle, will all judgments applying or refusing to apply the doctrine now be appealable to this Court under its jurisdiction over equity cases? Another question that arises is what impact this decision will have on overseas business interests in Georgia and on the efforts of Georgia residents to conduct business internationally. Since the majority has ruled that non-resident aliens

are not entitled to sue and be sued in our courts, will that not limit foreign investment in Georgia businesses and suggest to other countries that businesses related to this State should not be permitted to do business there since they cannot be brought into court in their own home state? These are the types of questions that are not answered by the majority and which, by their very nature, should be addressed by the legislature, not this Court.

One of the reasons stated in the majority opinion for jettisoning precedent and ignoring our Constitution's delineation of jurisdiction is that Georgia will now be ranked among the majority of U.S. jurisdictions with regard to this issue. There is, however, no particular virtue in joining the majority if the conditions that led to the majority's position do not prevail here. The majority opinion places us there without any apparent consideration for differences between the various states and their constitutions.

Finally, I cannot join the majority opinion because it has done exactly what this Court told the Court of Appeals in *Sapp v. Gem Line*, 267 Ga. 438 (4) (479 SE2d 712) (1997), that it should not do: it has used the inherent power of the courts "in order to avoid the merits of. [cases], and disregarded the statutory directive to . . . decide cases on the merits and avoid dismissals." Because I believe that the jurisdiction of the trial courts of this State is governed by our Constitution and by statute, and that the inherent powers of the courts do not extend to modifying or denying that which is so established, and because the majority opinion unwarrantedly abandons established precedent, ignores legislative prerogatives, provides no guidance, fails to consider the ramifications of its holding, and destroys predictability, certainty, and stability in the law, I must respectfully dissent to the judgment of the majority in this case.

I am authorized to state that Justice Carley joins this dissent.

DECIDED JULY 16, 2001 —
RECONSIDERATION DENIED JULY 26, 2001.

*Troutman Sanders, Harold G. Clarke, Norman L. Underwood, William N. Withrow, Jr., Lynette E. Smith*, for appellants.

*Cummings, Cummings & Dedenhefer, John L. Cummings III, Frank C. Dedenhefer, Jr., Richard M. Martin, Jr., Knight & Marlowe, Terry J. Marlowe, L. Katherine Adams, Lambert & Nelson, Hugh P. Lambert, Linda J. Nelson*, for appellees.