A05A0029. HEWETT et al. v. RAYTHEON AIRCRAFT COMPANY et al.
(614 SE2d 875)

BERNES, Judge.

The plaintiffs in the case below — John Edward Harry Hewett, Joan Hewett, and Andrea Nicole Lyons, as administrator of the estate of Brett Hewett (collectively, the "Hewetts") — appeal from the Order entered on May 26, 2004, by the Superior Court of Fulton County dismissing their products liability action on the ground of forum non conveniens. Following entry of that Order, the Georgia General Assembly enacted OCGA § 9-10-31.1 (2005), which sets forth under what circumstances Georgia courts may "decline to adjudicate [cases] under the doctrine of forum non conveniens." OCGA § 9-10-31.1 (a). Because we conclude that OCGA § 9-10-31.1 applies in this case, we vacate the May 26, 2004 Order. We remand for the superior court to comply with the terms of the newly enacted statute and to make specific findings of fact and conclusions of law showing the basis for its decision.

---

[22] *Gaston v. State*, 257 Ga. App. 480, 486 (6) (b) (571 SE2d 477) (2002).

This action for wrongful death and survival damages arose from an airplane accident in Queensland, Australia, that occurred on September 4, 2000. The charter flight commenced in Perth, Australia, and crashed into the ground five hours later after flying several hours on autopilot, resulting in the death of all eight occupants, including Brett Hewett. Investigators believed that the cause of the accident was cabin depressurization, but the cause of the depressurization is hotly disputed by the parties.

Prior to and at the time of the accident, the aircraft was owned and operated by an Australian charter operator, which also employed the pilot of the charter flight. All of the passengers were mine workers employed by an Australian company who were planning to fly to Leonora, Australia, for work-related reasons. Hewett, one of the mine workers, was a citizen of New Zealand. Similarly, his administrator and survivors who commenced this action are citizens of New Zealand.

On August 30, 2002, the Hewetts brought this products liability suit against Raytheon Aircraft Company and Professional Aviation Associates, Inc. in the Superior Court of Fulton County. Raytheon is the successor in interest to Beech Aircraft Corporation, which manufactured the plane in the United States. Raytheon is a Kansas corporation that has its principal place of business in Wichita, Kansas, but also conducts business in Georgia. Professional Aviation is a Georgia corporation involved in the sale of new and overhauled airplane parts.

Arguing that Australia would serve as a more appropriate forum for the dispute, Raytheon filed a motion for summary judgment on the ground of forum non conveniens, which Professional Aviation joined.[1] After full briefing on the issue, the superior court held a hearing on the motion. After hearing oral argument from the parties, the superior court took the matter under advisement and did not make any oral factual findings on the record. The superior court subsequently issued its Order on May 26, 2004, which stated in its entirety:

> This matter comes before the Court on a motion to dismiss for forum non conveniens. Based upon the record in the case, the applicable case law and the argument of

---

[1] Although Raytheon styled its motion as one for summary judgment, the trial court treated it as a motion to dismiss. A motion brought on forum non conveniens grounds is a matter in abatement that does not resolve the merits of the dispute and does not lead to dismissal with prejudice. "Matters in abatement are . . . not proper subjects for a motion for summary judgment." (Citations omitted.) *Hight v. Blankenship*, 199 Ga. App. 744, 745 (406 SE2d 241) (1991). As such, the trial court appropriately treated Raytheon's motion as a motion to dismiss. See id. (noting that trial court should "consider[ ] the substance rather than the nomenclature of the defendant's motion") (citation omitted).

counsel, the Court HEREBY GRANTS Defendants' *Motion to Dismiss for Forum Non Conveniens*.

The Supreme Court of Georgia adopted the doctrine of forum non conveniens in *AT&T Corporation et al. v. Sigala et al. v. Perez et al.*, 274 Ga. 137 (549 SE2d 373) (2001). For this reason and pursuant to all the evidence presented, the applicable case law and the argument of counsel, Defendants' *Motion to Dismiss for Forum Non Conveniens* is HEREBY GRANTED.

The Hewetts timely appealed from the Order.

On February 16, 2005, during the pendency of the Hewetts' appeal, the Governor of the State of Georgia signed into law Georgia Laws Act 1 (S.B. 3), which, among other things, revised provisions of the Official Code of Georgia pertaining to liability in medical malpractice tort actions and enacted new provisions regarding civil practice (the "Act"). See 2005 Georgia Laws Act 1 (S.B. 3). Significantly, Section 2 of the Act added a new provision to Title 9 of the Official Code of Georgia pertaining to the doctrine of forum non conveniens, OCGA § 9-10-31.1, which provides:

> (a) If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties and witnesses a claim or action would be more properly heard in a forum outside this state or in a different county of proper venue within this state, the court shall decline to adjudicate the matter under the doctrine of forum non conveniens. As to a claim or action that would be more properly heard in a forum outside this state, the court shall dismiss the claim or action. As to a claim or action that would be more properly heard in a different county of proper venue within this state, the venue shall be transferred to the appropriate county. In determining whether to grant a motion to dismiss an action or to transfer venue under the doctrine of forum non conveniens, the court *shall* give consideration to the following factors:
>
> (1) Relative ease of access to sources of proof;
>
> (2) Availability and cost of compulsory process for attendance of unwilling witnesses;
>
> (3) Possibility of viewing of the premises, if viewing would be appropriate to the action;
>
> (4) Unnecessary expense or trouble to the defendant not necessary to the plaintiff's own right to pursue his or her remedy;

(5) Administrative difficulties for the forum courts;

(6) Existence of local interests in deciding the case locally; *and*

(7) The traditional deference given to a plaintiff's choice of forum.

(b) A court may not dismiss a claim under this Code section until the defendant files with the court or with the clerk of the court a written stipulation that, with respect to a new action on the claim commenced by the plaintiff, all the defendants waive the right to assert a statute of limitations defense in all other states of the United States in which the claim was not barred by limitations at the time the claim was filed in this state as necessary to effect a tolling of the limitations periods in those states beginning on the date the claim was filed in this state and ending on the date the claim is dismissed.

(Emphasis supplied.)

In turn, Section 15 of the Act sets forth the effective dates for the various provisions of the Act:

(a) This Act shall become effective upon its approval by the Governor or upon its becoming law without such approval.

(b) Code Sections 51-12-31 and 51-12-33, as amended by this Act, and Code Sections 51-1-29.5, 51-2-5.1, and 51-13-1, as enacted by this Act, shall apply only with respect to causes of action arising on or after the effective date of this Act, and any prior causes of action shall continue to be governed by prior law. *It is the intention of the General Assembly that all other provisions of this Act shall apply to causes of action pending on its effective date, unless such application would be unconstitutional.*

(Emphasis supplied.) Finally, Section 16 provides that "[a]ll laws and parts of laws in conflict with this Act are repealed."

In light of the enactment of OCGA § 9-10-31.1 after the initial briefing in this appeal had been completed, we ordered supplemental briefing by the parties to address the impact of that provision on the superior court's Order. The Hewetts contend in their supplemental brief that OCGA § 9-10-31.1 applies in this case and mandates reversal. They contend that reversal is required because the trial court did not consider the specific factors set forth in OCGA § 9-10-31.1 (a) in rendering its decision, and because the defendants did not file a written stipulation stating that they would waive the statute of

limitation defense in all other states of the United States, as required by OCGA § 9-10-31.1 (b).

In contrast, the defendants argue that OCGA § 9-10-31.1 (a) has no impact on this case because the record reveals that the trial court already considered the factors set forth in OCGA § 9-10-31.1. They further assert that OCGA § 9-10-31.1 (b) is not applicable in this case because the subsection does not apply to actions brought by nonresident aliens injured in a foreign country where, as here, the defendants contend that the foreign country, rather than a sister state, is the more appropriate forum.

1. *Applicability of OCGA § 9-10-31.1 to this case.* We first address whether OCGA § 9-10-31.1 applies in this case. We conclude that it does. This action was pending as of the effective date specified in Section 15 (a) of the Act — February 16, 2005 — and remains pending today in this Court. Furthermore, OCGA § 9-10-31.1 is not one of the specific provisions listed in Section 15 (b) of the Act as applying "only with respect to causes of action arising on or after the effective date of this Act." Thus, under Section 15 (b) of the Act, OCGA § 9-10-31.1 "shall apply to causes of action pending on [the] effective date, unless such application would be unconstitutional." None of the parties has challenged the constitutionality of applying OCGA § 9-10-31.1 in this case. Accordingly, we conclude that OCGA § 9-10-31.1 governs this appeal.

2. *OCGA § 9-10-31.1 (a).* Having concluded that OCGA § 9-10-31.1 applies in this case, we next address the impact of OCGA § 9-10-31.1 (a) on the superior court's Order. As set forth above, OCGA § 9-10-31.1 (a) lists seven specific factors that a trial court "shall give consideration" in determining whether an action should be dismissed on the ground of forum non conveniens. As such, subsection (a) mandates that a trial court consider and weigh the factors listed therein as part of its decision-making process, and, consequently, it is an abuse of discretion for the trial court not to address each of the seven factors.

Based on our review of the hearing transcript and Order entered in this case, we are unable to determine whether the superior court considered each of the seven statutory factors in rendering its decision dismissing the case. The superior court did not make any oral findings at the hearing held on the motion, and the two-paragraph Order does not reveal the factors weighed and considered by the court. Accordingly, we must vacate the superior court's Order and remand for the court to specifically consider and weigh the seven factors enunciated in OCGA § 9-10-31.1 (a).

The defendants argue that the factors listed in subsection (a) are identical to the private and public interest factors set forth by the

Supreme Court of Georgia in *Sigala*, 274 Ga. at 138.[2] They contend that, as a result, we should presume that the superior court considered the seven factors listed in OCGA § 9-10-31.1 (a) even though the court's specific thought processes are not revealed in its Order, since the superior court cited to *Sigala* as a basis for its decision to dismiss. We disagree.

First, the public and private interest factors discussed in *Sigala*, 274 Ga. at 138, are not identical to the ones listed in OCGA § 9-10-31.1 (a). Specifically, OCGA § 9-10-31.1 (a) includes one factor not listed as a private or public interest factor in *Sigala* — "The traditional deference given to a plaintiff's choice of forum." OCGA § 9-10-31.1 (a) (7). The superior court's citation to *Sigala* as a basis for its decision in no way suggests that the court took into account and weighed that factor as part of its analysis, as mandated by OCGA § 9-10-31.1 (a).

Second, even if the factors discussed in *Sigala* were identical to those now found in OCGA § 9-10-31.1 (a), the Supreme Court of Georgia did not expressly require trial courts to consider each and every one of those factors in every case involving forum non conveniens, a situation that has now changed with the enactment of OCGA § 9-10-31.1 (a). In *Sigala*, the Court provided an overview of the law of forum non conveniens as it has been applied under federal common law, and in doing so noted the public and private interest factors that federal courts generally have considered when they have applied the doctrine. 274 Ga. at 138. Significantly, however, the Supreme Court never specifically discussed the scope of discretion that would be afforded to Georgia trial courts in how they applied the forum non conveniens doctrine. Nor did the Supreme Court discuss whether trial courts in this state were required in every case raising a forum non conveniens defense to consider and weigh *each and every* public and private interest factor identified in the Court's general overview of federal law or face reversal. While the Supreme Court certainly suggested that Georgia trial courts should apply a standard similar to that of the federal courts, that is not the same as the explicit requirement now codified in OCGA § 9-10-31.1 (a) that trial courts "shall" consider each and every one of the seven factors listed therein in every case raising a forum non conveniens defense. Thus, it does

---

[2] In *Sigala*, the Supreme Court of Georgia exercised its inherent authority to maintain the orderly and efficient administration of justice and adopted the common law doctrine of forum non conveniens for application in Georgia courts. 274 Ga. at 139-141. The Court held that trial courts have discretion to dismiss suits brought by nonresident aliens injured in a foreign country when there is an adequate alternative forum available and private and public interest factors weigh in favor of dismissal. Id. at 138-139. See also *Gonzalez v. Dept. of Transp.*, 279 Ga. 230 (610 SE2d 527) (2005).

not follow from the superior court's citation to *Sigala* that the court considered each and every factor identified in OCGA § 9-10-31.1 (a).

Third and finally, we refuse to presume that the superior court considered all of the statutory factors based on our conclusion that in forum non conveniens cases, trial courts must make oral or written findings that demonstrate that the required factors were weighed and considered by the court as part of its forum non conveniens analysis. Although the Supreme Court of Georgia has not addressed the issue, several courts in other jurisdictions have held that a trial court abuses its discretion when the record fails to show that the court specifically addressed and balanced the factors that are part of the forum non conveniens analysis. *La Seguridad v. Transytur Line*, 707 F2d 1304, 1308 (11th Cir. 1983); *Founding Church of Scientology &c. v. Verlag*, 536 F2d 429, 436 (D.C. Cir. 1976), rev'd in part on other grounds, *Moncrief v. Lexington Herald-Leader Co.*, 807 F2d 217 (D.C. Cir. 1986).

In accordance with this principle, several courts have held that a trial court errs when it summarily dismisses a suit on the ground of forum non conveniens without written or oral substantive explanation; instead, the trial court must "supply specific reasons and develop adequate facts to support its decision." (Citations omitted.) *Lacey v. Cessna Aircraft Co.*, 862 F2d 38, 43 (II) (3rd Cir. 1988); see also *In re Air Crash Disaster near New Orleans &c.*, 821 F2d 1147, 1166 (5th Cir. 1987) (en banc), vacated on other grounds sub nom., *Pan American World Airways v. Lopez*, 490 U. S. 1032 (109 SC 1928, 104 LE2d 400) (1989), reinstated except as to damages by *In re Air Crash Disaster near New Orleans &c.*, 883 F2d 17 (5th Cir. 1989) (en banc) ("*In re Air Crash Disaster*"); *DeShane v. Deere & Co.*, 726 F2d 443, 446 (8th Cir. 1984); *La Seguridad*, 707 F2d at 1308-1309. These "findings and conclusions should be set out in writing or clearly stated on the record." *In re Air Crash Disaster*, 821 F2d at 1166 (III) (B); see also *DeShane*, 726 F2d at 446.

We find these decisions persuasive. The doctrine of forum non conveniens is unique in the law because it allows a trial court to dismiss a suit that otherwise meets all of the jurisdiction and venue requirements for access to our courts on the grounds of administrative efficiency and convenience. See *Gulf Oil Corp. v. Gilbert*, 330 U. S. 501, 507 (67 SC 839, 91 LE 1055) (1947); *Sigala*, 274 Ga. at 138. We believe that in this unique context, it is particularly important that the decision of the trial court "be an exercise in structured discretion founded on a procedural framework guiding the . . . court's decision making process." (Punctuation omitted.) *Lacey*, 862 F2d at 43 (II), quoting *In re Air Crash Disaster*, 821 F2d at 1165. In order to ensure as much, we therefore hold that before dismissing a case on the ground of forum non conveniens, a trial court must make specific

findings either in writing or orally on the record demonstrating that the court has considered all seven of the factors set forth in OCGA § 9-10-31.1 (a). A summary order is not sufficient.[3]

It is true that "[i]n other circumstances, a summary order entered by a trial court generally is sufficient to enable the appellate court to determine whether the broad discretion vested in the trial court has been abused." *Bryant v. State*, 265 Ga. App. 234, 236 (593 SE2d 705) (2004). Even so, neither the Supreme Court of Georgia nor this Court has ever hesitated to require trial courts to make specific findings on the record under circumstances (as here) where important public policy concerns support such a rule. See, e.g., *Williams v. State*, 261 Ga. 640, 642 (2) (b), n. 3 (409 SE2d 649) (1991) (trial court must explicitly determine on the record whether the State has met its burden as to each specific prong of the test for determining whether similar transaction evidence may be introduced at trial); *Bryant*, 265 Ga. App. at 235-236 (trial court must enter findings of fact and conclusions of law when balancing the factors involved in assessing a defendant's constitutional speedy trial claim); *Friedrich v. Fidelity Nat. Bank*, 247 Ga. App. 704, 707 (545 SE2d 107) (2001) (trial court must articulate specific reasons for its decision over the amount of attorney fees to assess in common fund cases).

The defendants argue that the silence of OCGA § 9-10-31.1 (a) as to whether trial courts must make specific findings on the record indicating that all seven statutory factors have been considered shows that the General Assembly did not intend for such findings to be required. However, when important public policy reasons exist for requiring trial courts to make specific findings on the record, mere silence of the Georgia legislature in the applicable statute has not been deemed a bar to the imposition of such a requirement.

For example, we recently reiterated that trial courts must make specific findings of fact and conclusions of law when imposing attorney fees and costs under OCGA § 9-15-14, see *Mize v. Regions Bank*, 265 Ga. App. 635, 636 (2) (595 SE2d 324) (2004), even though that statute is silent as to whether specific findings are required. Such findings are particularly warranted in that context because OCGA § 9-15-14 works an exception to the baseline principle referred to as the "American Rule," under which each party is to bear his or her own attorney fees and expenses of litigation. See *Friedrich*, 247 Ga. App. at 705 (discussing "American Rule"). Thus, public policy reasons justified imposing a requirement that trial courts make specific findings on the record when awarding attorney fees and costs, despite

---

[3] As noted, the trial court's findings can be made orally at the end of a hearing held on the forum non conveniens issue.

legislative silence on the issue. Similarly, public policy supports the imposition of such a requirement in the forum non conveniens context because of the broad discretion afforded to trial courts to dismiss a case even though jurisdiction and venue are otherwise proper. Legislative silence in such a context serves as no bar.[4]

For the foregoing reasons, we vacate the superior court's Order and remand for the court to consider and weigh each of the seven factors listed in OCGA § 9-10-31.1 (a) as part of its forum non conveniens analysis. We further hold that on remand the trial court should make specific findings orally or in writing showing that the court has considered and weighed each of the seven statutory factors, and making transparent the reasoning supporting the court's decision over whether to dismiss the case.

3. *OCGA § 9-10-31.1 (b)*. Because the issue will recur on remand, we also address whether, pursuant to OCGA § 9-10-31.1 (b), the defendants must file a written stipulation stating that "with respect to a new action on the claim commenced by the plaintiff," they will waive the statute of limitation defense "in all other states of the United States," before the trial court may dismiss the case on the ground of forum non conveniens. In light of the plain language of OCGA § 9-10-31.1 (b), we conclude that such a written stipulation "fil[ed] with the court or with the clerk of court" is a mandatory condition precedent to the dismissal of a case under the doctrine of forum non conveniens.

The defendants contend that the written stipulation requirement imposed by OCGA § 9-10-31.1 (b) should not apply in this case, because the General Assembly did not intend for it to "apply to actions brought by foreign citizens for accidents which occur on foreign soil" where the allegation by the defendants is that a foreign country, rather than a sister state, would serve as the appropriate forum. In the defendants' view, the procedural requirements for such actions are instead governed solely by the Supreme Court of Georgia's decision in *Sigala* and the codification of that decision in OCGA

---

[4] The defendants cite to *Cooper v. State*, 235 Ga. App. 66 (508 SE2d 447) (1998), and *Lee v. White Truck Lines*, 143 Ga. App. 94 (238 SE2d 120) (1977), for the proposition that Georgia courts have not imposed a requirement that trial courts make specific findings or articulate the basis for their decisions when the statute at issue does not by its terms expressly require as much. Even assuming that the defendants' broad interpretation of these cases is correct — compare *Wood v. Notte*, 238 Ga. App. 748 (519 SE2d 923) (1999) and *Ga. Dept. of Human Resources v. Patillo*, 194 Ga. App. 279 (390 SE2d 431) (1990) — *Cooper* and *Lee* are distinguishable from the situation here. Neither case addressed whether this Court may impose a requirement that the trial court make specific findings when important public policy concerns counsel in favor of such a requirement, as in the attorney fees context or in the present case, and when the General Assembly has not spoken on the issue.

§ 50-2-21,[5] neither of which impose a written stipulation requirement as a condition precedent to dismissal. They assert that "OCGA § 9-10-31.1 cannot be interpreted to supplant, supplement, or otherwise modify either the provisions of OCGA § 50-2-21 or the supreme court's decision in *Sigala* absent a clear indication of legislative intention to do so."

However, we conclude that the General Assembly provided such a clear indication when it enacted OCGA § 9-10-31.1.[6] When interpreting statutes, we give words their plain and ordinary meaning. *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). By its plain terms, OCGA § 9-10-31.1 applies whenever a trial court is "determining whether to grant a motion to dismiss an action . . . under the doctrine of forum non conveniens" and authorizes a court to dismiss an action that "would be more properly heard in a forum outside this state." OCGA § 9-10-31.1 (a). Similarly, in the preamble to the Act, the General Assembly specifically noted that the Act was intended "to provide that the courts of this state may under certain circumstances decline to decide cases under the doctrine of forum non conveniens." 2005 Georgia Laws Act 1 (S.B. 3), preamble. Thus, as the absence of any limiting language indicates, the General Assembly clearly intended for OCGA § 9-10-31.1 to define the substantive and procedural requirements applicable whenever a trial

---

[5] OCGA § 50-2-21, provides:

(a) The jurisdiction of this state and its laws extend to all persons while within its limits, whether as citizens, denizens, or temporary sojourners.

(b) A court of this state may decline to exercise jurisdiction of any civil cause of action of a nonresident accruing outside this state if there is another forum with jurisdiction of the parties in which the trial can be more appropriately held. In determining the appropriateness of this state or of another forum, the court shall take into account the following factors:

(1) The place of accrual of the cause of action;

(2) The location of witnesses;

(3) The residence or residences of the parties;

(4) Whether a litigant is attempting to circumvent the applicable statute of limitations of another state; and

(5) The public factor of the convenience to and burden upon the court.

(c) Upon a motion filed not later than 90 days after the last day allowed for the filing of the moving party's answer and upon the party's showing that the existing forum constitutes an inconvenient forum based on the factors listed in subsection (b) of this Code section and where there is another forum which can assume jurisdiction, the court may dismiss the action without prejudice to its being filed in any appropriate jurisdiction on any condition or conditions that may be just.

[6] Significantly, the relevant subsections of OCGA § 50-2-21 only apply to actions filed on or after July 1, 2003. Ga. L. 2003, p. 820, § 9. The present case was filed on August 30, 2002. Thus, OCGA § 50-2-21 (b) and (c) are not applicable in this case. Consequently, we do not have to resolve whether OCGA § 9-10-31.1 impliedly repeals OCGA § 50-2-21 because the two provisions can only be read as in conflict, or whether OCGA § 50-2-21 can be interpreted as setting forth a series of requirements that must be satisfied *in addition to* those set forth in OCGA § 9-10-31.1.

court addresses the doctrine of forum non conveniens. And, included within those requirements is the newly enacted OCGA § 9-10-31.1 (b), mandating that a written stipulation pertaining to statutes of limitation be filed by the defendants before "[a] court may . . . dismiss a claim under this Code section." Thus, we reject the defendants' argument that the General Assembly did not intend for OCGA § 9-10-31.1 (b) to apply to all actions where dismissal is predicated on the doctrine of forum non conveniens.[7] On remand, the defendants must file a written stipulation consistent with the requirements of OCGA § 9-10-31.1 (b).

*Judgment vacated and case remanded. Smith, P. J., and Miller, J., concur.*

DECIDED MAY 11, 2005.

*E. Alan Armstrong*, for appellants.
*McNatt & Greene, Hugh B. McNatt, Troutman Sanders, Daniel S. Reinhardt*, for appellees.

---

[7] We also note that the Hewetts proposed the state of Kansas as an alternative forum for litigating this suit in lieu of Australia. Thus, the written stipulation requirement imposed by OCGA § 9-10-31.1 (b) is clearly relevant to this case, even though the defendants argued that Australia was the more appropriate forum, rather than a sister state.