23343. FULTON COUNTY et al. v. WOODSIDE et al.
23344. CITY OF ATLANTA v. WOODSIDE et al.

ARGUED FEBRUARY 15, 1966—DECIDED APRIL 7, 1966—
REHEARING DENIED MAY 5, 1966.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, E. J. Summerour, Assistant Attorneys General, T. Charles Allen, Harold Sheats, Lloyd T. Whitaker,* for appellants (Case No. 23343).

*Houston White, Robert F. Lyle, William W. Horton, Carl T. Hudgins,* for appellees.

*Henry L. Bowden, Edwin L. Sterne, Robert F. Lyle,* for appellants (Case No. 23344).

*Houston White, E. J. Summerour, Assistant Attorney General, William W. Horton, Carl T. Hudgins,* for appellees.

For parties at interest not parties to record in both cases:

*Gould B. Hagler, David J. Heinsma, James H. Bratton, Jr., Ferdinand Buckley, Clyde Dekle, David H. Gambrell, William G. Grant, Thomas A. Rice, Robert B. Troutman, G. Seals Aiken, F. L. Breen, John A. Dunaway, W. Colquitt Carter,* for parties at interest not parties to record.

MOBLEY, Justice. These appeals arise from a suit brought by John J. Woodside, III, against Fulton County, the State Highway Department of Georgia, Wright Contracting Company, Inc., Hudgins & Company, Inc., and the City of Atlanta. The plaintiff, Woodside, seeks damages under *Code Ann.* § 95-1710 (Ga. L. 1919, p. 249; 1922, p. 176; 1957, pp. 593, 594) for the alleged negligent severance of his building against all the defendants, except the City of Atlanta, against which he seeks an injunction to prohibit the city from prosecuting him for violation of the Building Code of Atlanta imposing a criminal penalty upon anyone maintaining an unsafe building or structure. Counsel for plaintiff had attempted to have Judge George P. Whitman, Sr., of the Fulton Superior Court act on that portion of his petition seeking to temporarily enjoin the city. Judge Whitman refused to act on the petition, as the rules of the court required that all applications for temporary injunctive relief be presented to the Presiding Judge of the Civil Division, or to the Judge who may be temporarily serving for him. Counsel for plaintiff then approached the Presiding Judge and requested that the matter be assigned to Judge Durwood T. Pye of the same court. The Presiding Judge refused this request and referred counsel to the Chief Judge who suggested that he return to the Presiding Judge in accordance with the rules of the court. However, counsel for plaintiff presented the matter to Judge Pye, who declined to act but stated that in the absence of any successful attack on the rules of the court, and an adjudication of the question of his jurisdiction, if an attack was made upon the rules, he would refuse to take any action with reference to the case. Plaintiff filed amendments to his petition attacking the rules of the court and the Chief Judge Act (Ga. L. 1963, p. 646). as unconstitutional, and praying that Judge Pye temporarily and permanently enjoin the City of Atlanta; pass an order accepting jurisdiction of the case, so that he and no other Judge of the Fulton Superior Court could hear and determine whether the

city should be permanently enjoined; and, also that he should preside as judge over all other matters in the case, retaining complete jurisdiction in himself throughout the trial of the entire case.

There were other amendments to the petition and defensive pleadings filed, none of which needs to be stated here as, in our view of this case, the controlling issue is whether the order of the court of October 18, 1965, holding the Chief Judge Act (Ga. L. 1963, p. 646) and the rules implementing that Act promulgated by the Chief Judge unconstitutional is correct. In reaching that decision, the trial judge held that the judges of the superior courts of the State have concurrent authority under the Constitution of the State of Georgia, which authority cannot be curtailed or expanded by the legislature or by rules of the court, that plaintiff has the constitutional right as a litigant to have his entire case handled by one judge; that he, Judge Pye, assumed jurisdiction of the case, and that each of the nine Judges of the Atlanta Judicial Circuit was a separate superior court. By another order of the same date, Judge Pye continued the temporary restraining orders against the city prohibiting it from prosecuting plaintiff under the Building Code of Atlanta and as against all the defendants prohibiting them from filing any petition for declaratory judgment or other pleadings connected with the issues of the instant case, pending the interlocutory hearing on the issue of the injunctive relief sought by plaintiff.

To these rulings the City of Atlanta filed its enumeration of errors as did the other defendants. All defendants assign error on the orders of October 18th and to previous orders by Judge Pye adverse to their particular pleadings and motions.

■ The contention that the appellee has failed to show any lawful standing upon which to attack the constitutionality of the Chief Judge Act and the Chief Judge Rules is without merit. The test for proper standing is that "[B]efore a statute can be attacked by anyone on the ground of its unconstitutionality, he must show that its enforcement is an infringement upon his right of person or property, and that such infringement results from the unconstitutional feature of the statute upon which he bases his attack." *South Georgia Natural Gas Co. v. Georgia Public Service Comm.*, 214 Ga. 174, 175 (1) (104 SE2d 97) and cases

cited. Clearly the petition presents the issue that the enforcement of the Chief Judge Act and the Chief Judge Rules deprives petitioner of his right to present his petition to any particular Judge of the Fulton Superior Court, and that the infringement upon his right to do so results from the unconstitutional features of the statute and rules upon which he bases his attack, which rules require that a petition for injunctive relief must be presented to the Presiding Judge. If the Chief Judge Act and Rules are constitutional, Judge Pye had no authority to take jurisdiction of the case and issue the temporary injunction; if unconstitutional, he was authorized to do so.

■ The primary question for determination in this case is whether the trial judge erred in his order of October 18, 1965, declaring unconstitutional Sections 2 and 3 of the Chief Judge Act (Ga. L. 1963, p. 646) and the Chief Judge Rules promulgated by the Chief Judge. All other rulings excepted to were made either in contemplation of the result reached in said order or in pursuance of said order.

Section 1 of the Chief Judge Act merely establishes the office of Chief Judge of the Atlanta Judicial Circuit and provides for his election by a majority of the judges, tenure, and removal by majority vote of the judges. This section is not affected by any ruling of the trial judge. Section 2 of the Act setting out the duties of the Chief Judge states as follows: "Such chief judge shall be responsible for the administration and the expeditious disposition of the business of the superior court of said circuit, and shall have power to make such rules as he shall deem necessary or proper for such purpose, but not in conflict with the general laws of this State, which rules, when entered on the minutes of said court, shall be binding upon the other judges of said circuit, until the same shall be overruled by an order signed by a majority of the judges of such circuit." Section 3 of the Act states as follows: "Such chief judge may by published rule, or from time to time by order, allocate the jurisdiction and powers of the superior court of said circuit, and the duties of the judges thereof, among the judges of said circuit; may assign to the judges of said circuit such of the business of said circuit as he shall deem appropriate, provided that any assignment of

cases to or among the other judges of said circuit shall be in accordance with a published rule of court; may make and publish calendars; may require reports from the clerk of court of said circuit relative to business pending before the court of said circuit; and generally shall supervise and direct the disposition of all the business of said court." Ga. L. 1963, pp. 646, 647. The Chief Judge Rules implement the Chief Judge Act and purport to regulate the business of the circuit by rules including the establishment of various divisions of the court as follows: "(a) a Presiding Judge, Civil Division (b) One or more Civil Jury Divisions (c) One or more Civil Non-Jury Divisions (d) One or more Domestic Relations Divisions (e) One or more Criminal Jury Divisions (f) Such other Divisions as may be determined by the Chief Judge."

Appellants contend that plaintiff's counsel violated that part of Rule 4(b)4 of the Chief Judge Rules which provides: "All applications for . . . temporary injunctive relief . . . shall be presented to the Presiding Judge, Civil Division, or to the Judge who may be temporarily serving for him . . ." when he refused to submit his petition praying for temporary injunctive relief to the then Presiding Judge of the Fulton Superior Court and, instead, presented the matter to Judge Pye. They further contend that the trial judge violated the Chief Judge Rules and the Chief Judge Act in considering the petition for injunctive relief, that said rules and Act are constitutional and binding upon all the Judges of the Atlanta Judicial Circuit, and that the trial judge acted without authority when he granted the order temporarily restraining the City of Atlanta from prosecuting plaintiff and enjoining all the defendants from filing any petition or pleading relative to the instant case with the clerk of the court. Appellee, Woodside, contends that the Chief Judge Act and the Chief Judge Rules are unconstitutional and inoperative as held by the trial judge, because they violate those provisions of the Constitution of the State of Georgia establishing the jurisdiction and authority of the superior court judges of the State as their effect is ". . . that a judge's jurisdiction is first carved into pieces and taken away and lodged in the Chief Judge" and "that each lawsuit filed in court is carved into many

pieces or elements of subject matter until a final judgment is reached in the trial court, during which time some six to nine judges will pass on one or more questions arising out of said case . . ." and that the trial judge has complete authority under these constitutional provisions to grant the injunctive relief and to take jurisdiction of the entire case.

The trial judge ruled in essence that Sections 2 and 3 of the Chief Judge Act and the Chief Judge Rules curtail the jurisdiction of the superior court and the judges thereof and are not authorized by Article VI, Section III, Paragraph I of the Constitution of the State of Georgia (*Code Ann.* § 2-3801) which provides: "There shall be a judge of the Superior Courts for each judicial circuit, whose term of office shall be for four years, and until his successor is qualified. He may act in other circuits when authorized by law. The legislature shall have authority to add one or more additional judges of the superior court for any judicial circuit in this State, and shall have authority to regulate the manner in which the judges of such circuits shall dispose of the business thereof, and shall fix the time at which the term or terms of office of such additional judge or judges shall begin, and the manner of his appointment or election, and shall have authority from time to time to add to the number of such judges in any judicial circuit; provided that at all times there shall be at least one judge in every judicial circuit of this State," and are violative of Article VI, Section IV, Paragraphs I, II, III, IV, V, and VIII of the Constitution of the State of Georgia (*Code Ann.* §§ 2-3901—2-3905 and § 2-3908) which confer upon the superior courts of the State their jurisdiction and powers, and Art. VI, Sec. I, Par. I (*Code Ann.* § 2-3601) which vests the judicial powers of the State in the courts of the State as enumerated therein, and including the superior courts. Upon this premise, Judge Pye assumed jurisdiction of the entire case, as a superior court in himself under his construction of the Constitution of the State of Georgia.

It is a cardinal rule followed by this court that legislation under attack as being in violation of constitutional mandates will be construed and upheld as constitutional unless conflict with the Constitution is clear and palpable. *Brookins v. State,* 221 Ga.

181 (144 SE2d 83); *McCollum v. Bass*, 201 Ga. 537 (40 SE2d 650); *Davis v. Board of Educ. of Coffee County*, 203 Ga. 44, 45 (45 SE2d 429). If by reasonable construction legislation can be supported by the Constitution it will not be invalidated as unconstitutional. *Hill v. Busbia*, 217 Ga. 781, 782 (125 SE2d 34); *Spence v. Rowell*, 213 Ga. 145 (92 SE2d 350).

By Act (Ga. L. 1878-79, p. 149; 1886, p. 34) the General Assembly provided that in counties of more than 10,000 population, two or more judges of the superior court could preside en banc, or that court could be held in two or more sections at the same time by different judges, in separate courtrooms, or different locations at the county site. This court in *Bone v. State*, 86 Ga. 108, 116 (12 SE 205) held that those Acts did not violate the Constitution, which requires at least two sittings of the superior court in each county but does not prohibit more sittings, nor does it prohibit two or more sections of the superior court presided over by different judges sitting at the same time, and in *Welborne v. State*, 114 Ga. 793, 824 (40 SE 857), this court held that: "While under the Constitution there could be only one Judge of the Atlanta Circuit, any judge of the superior court in Georgia is authorized to preside in, and hold the Superior Court of Fulton County, and it was competent for the General Assembly to provide that if the business of the superior courts of counties of the class to which Fulton County belonged was such that the judge of the circuit could not properly dispose of the same, the court could be separated into divisions for the disposition of this business, the division to be presided over by judges of the superior courts of this State who were competent to preside in any superior court of the State . . . (and) for as many divisions as judges of the superior court can be obtained to hold." The significance of those decisions is that this court there recognized that there is only one superior court in each county, but that the court may be presided over by more than one judge, and that the court may be divided into divisions, each presided over by a different judge. Clearly Fulton County has one superior court with nine judges—not nine superior courts with a judge for each.

The General Assembly by this Act (Ga. L. 1878-79, p. 149;

1886, p. 34) recognized that when more than one judge presided in the superior court of a county, rules for administration were necessary, in providing that the judge of the circuit, or in his absence, the senior judge in commission present should have authority to make regulations, "for the service of jurors, talesman, officers, and for direction of notice to suitors, counsel and witnesses, and calling dockets." Then in 1906, the Constitution of 1877, Art. VI, Sec. III, Par. I (*Code Ann.* § 2-3801) (providing each circuit shall have one judge) was amended by adding that "The legislature shall have authority to add one or more additional judges of the superior court for any judicial circuit in this State, and shall have authority to regulate the manner in which the judges of such circuits shall dispose of the business thereof . . ." The following year in 1907, the legislature authorized a second judge for the Atlanta Circuit, and gave the two judges of the circuit "full power, authority and discretion to determine . . . the manner of calling the dockets in said circuit and of fixing the order of business," and further provided that "They may assign the hearings of trials by jury for a term to one of said judges, and the hearing of all other matters not requiring a jury to the other judge, and went further to provide that if in all matters "relating to the manner of fixing, arranging for and disposing of the business of said district where the judges thereof cannot agree, or shall differ, the opinion or order of the judge senior in term of service as superior court judge shall control." Ga. L. 1907, p. 60. This in effect gave the senior judge absolute authority in such matters.

It is significant that before the Constitution of 1877 was amended in 1906, giving to the legislature authority to add additional judges of the superior court in the judicial circuits of the State, the legislature recognized that where more than one judge acted in a superior court it was necessary that there should be provision made for administration of the work of the court and distribution of the business, and that the General Assembly has since recognized in every one of the nineteen Acts providing for additional judges, as it did in the Act of 1879, that problems of handling the business of the court would be encountered by the multi-judge courts, which did not exist in the one-judge courts, and made provision therefor.

We now consider, first, whether the trial court was correct in holding that Sections 2 and 3 of the Chief Judge Act are not authorized by the provision of the Constitution of 1945 (*Code Ann.* § 2-3801) providing that "The legislature . . . shall have authority to regulate the manner in which the judges of such circuit [i.e., multi-judge] dispose of the business thereof . . . ," that they violate certain constitutional provisions heretofore cited with reference to the vesting of judicial power in the courts of the State, and in holding that these sections violate the uniformity provision of the 1945 Constitution, relating to courts (*Code Ann.* § 2-4401). It is clear that the provision of Section 2 that the Chief Judge "shall be responsible for the administration and disposition of the business of the superior court of said circuit" and that the Chief Judge "shall have power to make such rules as he shall deem necessary or proper for such purpose, but not in conflict with the general laws of this State," which are binding upon the other judges unless overruled by a majority of the judges, does not concern the general rules of practice and procedure respecting superior courts of Georgia provided by statute, as Section 2 specifically provides that the rules promulgated by the Chief Judge may not conflict with the general laws of this State. The phrase "but not in conflict with the general laws of this State" obviously distinguishes the administrative rule making power of the individual courts from the general rules of practice and procedure of the superior courts fixed by law. Section 2 does no more than make the Chief Judge responsible for the administrative and expeditious disposition of the business of the court and gives him authority to make rules necessary therefor, not in conflict with general laws of the State, and makes such rules binding upon the other judges until they are overruled by order of a majority of the judges. The provisions of Section 2 are authorized by the constitutional provision giving the legislature authority to regulate the manner in which the judges of multi-judge circuits shall dispose of the business thereof, and we so hold. Section 3 specifies the manner in which the Chief Judge may perform the responsibility of administration and expeditious disposition of the business of the court required of him by Section 2. Under Section 3 he is authorized by published rule to

allocate the jurisdiction and powers of the Superior Court of the Atlanta Circuit, and the duties of the judges thereof among the judges of the circuit, and may assign the business of the circuit to the judges by published rule of the court, and shall generally supervise and direct the disposition of the business of the court.

It is obvious and generally recognized throughout this country that in multi-judge circuits there must be some method of assigning the business of the court among the various judges thereof. See 21 CJS 210, Courts, § 137. Otherwise, there would be chaos and a complete failure to handle expeditiously the business of the court, which is the primary purpose of the Chief Judge Act. Without rules governing distribution of the business of the court among the various judges, each of the judges could select the cases or types of cases he would try leaving no one to dispose of the other business of the court. Some system for the expeditious handling of the business of the court is essential.

We agree with the able trial judge that the Constitution has vested all the judicial power in the courts of the State, and that neither the legislature nor a judge, nor the judges of a superior court have authority to limit or expand the jurisdiction and authority of a superior court. But the authority given the Chief Judge by Section 3 to "allocate the jurisdiction of the court . . . and the duties of the judges thereof, among the judges of the circuit . . ." does not so affect the jurisdiction of the court. We recognize, as has the General Assembly in every Act adding additional judges to the Atlanta Circuit since the original Act of 1907 (Ga. L. 1907, p. 60), "That Judges of the Superior Court are co-equal in jurisdiction and authority." Yet in each one of those seven Acts from 1907 to 1956, provision was made for the disposition of court business, by the senior judge, or by a majority of judges, in the event of disagreement. It is not, in our opinion, inconsistent to say that the judges in multi-judge circuits shall have co-equal jurisdiction and authority, yet be subject to reasonable rules designed to expedite the business of the court by adopting a manner or method for distribution of the business of the court among the judges. One judge cannot handle and dispose of all the business of the court; thus, the legislature has provided nine for the purpose. The authority,

jurisdiction and powers of each superior court judge are the same, yet in multi-judge circuits they are physically unable to exercise that authority and jurisdiction and power in every case filed in the superior courts of that circuit. Assignment of non-jury, or criminal, or jury, or other kinds of cases to a judge under the Chief Judge Act and Rules does restrict his authority and powers to that type of cases during that assignment, but this in no way limits, detracts from, or otherwise controls the jurisdiction of the court which is a separate entity from and larger in scope than the judge or judges of that court. As heretofore pointed out, there is one Superior Court of Fulton County with nine judges thereof, and as stated in *Albea v. Watts,* 114 Ga. 149 (39 SE 940), "a judge of a superior court is certainly not a superior court." See also *Chandler v. Barefield,* 178 Ga. 265 (172 SE 919; *Nichols v. Faircloth,* 95 Ga. App. 641 (98 SE2d 416).

The power given the Chief Judge to "allocate the jurisdiction and powers of the superior court of said circuit [Atlanta Circuit], and the duties of the judges thereof among the judges thereof" and to assign business of the circuit among them all by published rule of the court, is authorized by that provision of the Constitution of 1945 (Art. VI, Sec. III, Par. I; *Code Ann.* § 2-3801) which provides that in judicial circuits where there is more than one judge, the legislature shall have authority to regulate the manner in which the judges of such circuits shall dispose of the business thereof. "Allocate" means to "distribute," "assign," or "designate" (Webster's Seventh New Collegiate Dict. (1963)—see Central Eureka Min. Co. v. U. S., 138 FSupp. 281, 295 (134 Ct. Cl. 1)), and it means "to fix the place of; locate" (American College Dict.) The authority of the Chief Judge by published rule to allocate the jurisdiction and powers of the court and the duties of the judges adds nothing to his jurisdiction as a superior court judge; it operates merely as a device by which the jurisdiction of the court and the duties of its judges are distributed among the judges of the court. The jurisdiction is in the superior court, and the judge's function is to exercise that jurisdiction; but he doesn't have to exercise all of it in all cases, if, for no other reason, it is impossible for him to do so in a large circuit such as the Atlanta Circuit, where nine judges have difficulty in keeping abreast of the work of the court.

The Chief Judge Act is capable of reasonable construction in harmony with the Constitution and laws of this State. So construed, we hold that it is not unconstitutional because it empowers the Chief Judge to distribute the business of the court among the nine judges. See Coral Gables v. Blount, 131 Fla. 36 (178 S 554); Hargadine-McKittrick Dry Goods Co. v. Garesche, (Mo. 1921) 227 S.W. 824, 828; Ashley v. Three Justices, 228 Mass. 63 (116 NE 961). Furthermore, as shown above, the historical development of the creation and the regulation of multi-judge circuits sanctions the method of regulation of the Atlanta Judicial Circuit in the Chief Judge Rules as reasonable, fair and not arbitrary or capricious.

In so holding we are not unmindful of the grave concern of counsel for appellee, as expressed in his supplemental brief, over the case of Chandler v. Judicial Council of the 10th Circuit of the U. S., 382 U. S. 1003 (86 SC 610, 15 LE2d 494), where the council has withheld from one of its judges all business of the court and has refused to permit him to perform any and all duties of his office. The Supreme Court of the United States, by a majority ruling, withheld decision on the merits of the case until it is tried in the lower court. While we are not faced with such situation here, we do not hesitate to say that the Constitution of this State does not authorize the General Assembly to enact any law stripping any superior court judge of jurisdiction and powers conferred upon him by the Constitution, nor do the Chief Judge Act and the Rules under attack here purport to do so. It is significant that the Chief Judge Act provides that a majority of the Superior Court Judges of the Atlanta Circuit may overrule any rule made by the Chief Judge for distribution of the business of the Fulton Superior Court and may remove the Chief Judge at any time, which is protection against abuse of his power or an unfair distribution of the business of the court by a Chief Judge.

The contention was made and upheld by the trial court that the Chief Judge Act and the Rules and orders of business issued by the Chief Judge pursuant to the Act, infringe upon, control, cut down, limit and restrict the power, authority, jurisdiction and control of the Judges of the Superior Court of Fulton County,

and in this way violate the uniformity provision of the Constitution of Georgia (Art. VI, Sec. IX, Par. I; *Code Ann.* § 2-4401) which provides "Except as otherwise provided in this Constitution, the jurisdiction, powers, proceedings and practice of all courts or officers invested with judicial powers (except City Courts) of the same grade or class, so far as regulated by law, and the force and effect of the process, judgment and decree, by such courts, severally, shall be uniform. The uniformity must be established by the General Assembly, and in case of City Courts, may be established by the General Assembly." It is significant that the phrase "Except as otherwise provided in this Constitution" was not in the Constitution of 1877, but was added to this section for the first time in the Constitution of 1945. Obviously this exception takes care of any lack of uniformity between single judge and multi-judge circuits, and the provision of the Constitution of 1945 (*Code Ann.* § 2-3801) that the legislature shall have authority to regulate the manner in which the judges in multi-judge circuits shall dispose of the business of the court permits lack of uniformity in this respect in multi-judge circuits. The Chief Judge Act and Rules do not violate the uniformity provision of the Constitution of Georgia.

For the foregoing reasons, the judgment of the trial judge of October 18, 1965, holding that the Chief Judge Act and the Chief Judge Rules are unconstitutional and inoperative was error.

■ In view of the rulings in Division 2 of the opinion that the Chief Judge Act and the Chief Judge Rules are constitutional, Judge Pye was without authority to act on the petition for temporary injunctive relief, as the Rules require the submission of the petition for such relief to the Presiding Judge. Since he was without jurisdiction his judgment granting the injunction and other relief prayed for is nugatory and void.

*Judgment reversed. All the Justices concur.*