### A05A0617. WILLIAMS v. THE STATE.
(614 SE2d 146)

MILLER, Judge.

Fifteen-year-old Immanuel Williams was charged with murder and tried as an adult pursuant to OCGA § 15-11-28 (b) (2). A jury found him guilty of voluntary manslaughter, and he was sentenced to 15 years with 12 to serve. On appeal he contends that the trial court erred in (1) the manner in which it instructed the jury on voluntary manslaughter and justification, (2) using a confusing verdict form that caused the jury to return an inconsistent verdict, (3) giving an unduly suggestive *Allen* charge to the jury, (4) admitting into evidence his videotaped statement to police, and (5) increasing his sentence when it ruled on his motion to modify the sentence. Williams also argues that OCGA § 15-11-28 (b) (2) is unconstitutional as applied to him because it required that he be tried as an adult. Since the trial court erred only when it increased Williams's sentence once he began to serve it, we affirm Williams's conviction but vacate his sentence and remand this case to the trial court for resentencing.

Viewed in the light most favorable to the verdict, the evidence reveals that following a brief altercation with the victim, Williams shot the victim several times, emptying his clip of bullets into the victim's body. Even after doing so, Williams continued to stand over the body and pull the gun's trigger several more times.

---

[9] See *In the Interest of C. B. H.*, supra.
[10] See *In the Interest of J. J.*, 259 Ga. App. 159, 165 (575 SE2d 921) (2003).

Williams was arrested and immediately taken to the police station. Police read Williams his *Miranda* rights, and he and his mother voluntarily signed a form waiving counsel for Williams. With Williams's mother present, police interviewed him about the shooting. As soon as Williams's mother requested an attorney, police ceased all questioning of Williams. Police videotaped the interview with Williams, and this videotaped interview was later admitted into evidence at Williams's trial over defense counsel's objection.

Williams was charged with murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. Pursuant to OCGA § 15-11-28 (b) (2) (A) (i), Williams was tried in superior court as an adult. See id. ("The superior court shall have exclusive jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed . . . [m]urder.")

Prior to trial, Williams's attorney requested that the jury be charged on voluntary manslaughter. The court gave Williams's requested charge at trial. Following 15 hours of deliberations, the court gave the jury an *Allen* charge. Defense counsel specifically informed the trial court that he had no objection to the form of the *Allen* charge. The following day, the jury returned a guilty verdict on voluntary manslaughter only. Since the jury verdict form did not include a pre-printed voluntary manslaughter category, the jury's verdict was handwritten at the bottom of the form. Defense counsel specifically approved the use of this verdict form.

Williams was sentenced to 15 years with 12 to serve. After he began serving this sentence, Williams filed a motion to modify the sentence, arguing that it was too harsh. The court granted the motion in part, resentencing Williams to twenty years with nine to serve. Williams appeals.

1. Williams claims that the manner in which the trial court gave his requested instruction on voluntary manslaughter was confusing to the jury. He does not claim that the instructions given were inaccurate statements of the law or inapplicable to the facts of his case. Rather, he contends that the interplay between the legally accurate charges on justification and voluntary manslaughter could have confused the jury based on the sequence in which they were presented. We disagree.

"[P]urportedly ambiguous instructions must be read in the context of the whole charge, and in the context of the evidence to which they were to apply. Instructions which, when the jury is given credit for ordinary intelligence, are not confusing and prejudicial, are not reversible error." (Citations and punctuation omitted.) *Yearwood v. State*, 198 Ga. App. 389, 390 (3) (401 SE2d 558) (1991). Here,

[t]he charge, *as given*, stated general legal principles which were correct and otherwise applicable in the instant case. If [Williams] wished to have the jury *further* instructed so as to *clarify* the interplay between any of these legal principles, he should have made a written request for such additional instructions. No such written request was made and appellant's contention that the charge as given was ambiguous is without merit.

(Emphasis in original.) Id.

"We do not require the trial courts to follow an exact formula in instructing juries so long as the charge as a whole ensures that the jury will consider whether evidence of provocation and passion might authorize a verdict of voluntary manslaughter." *Tessmer v. State*, 273 Ga. 220, 223 (3) (539 SE2d 816) (2000). Taken as a whole, the charge accurately stated the law and was not confusing. It was also adjusted to the evidence and allowed the jury to properly consider whether Williams was guilty of the charged offenses or voluntary manslaughter, or whether he was not guilty of any crime under the evidence presented.[1]

2. Since Williams's counsel specifically approved the verdict form used at trial, he has waived review on appeal of any issue concerning the jury verdict form. See, e.g., *Herring v. State*, 277 Ga. 317, 319 (5) (588 SE2d 711) (2003).

3. Williams contends that the trial court erred by using certain problematic language in its *Allen*[2] charge to the jury. However, Williams's counsel informed the court below that he had no objection to the form of the *Allen* charge given. See, e.g., *Williams v. State*, 248 Ga. App. 628, 631 (3) (548 SE2d 350) (2001). Even if he had so objected, moreover, Williams would still have to show that "the instruction [was] coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Punctuation and footnote omitted.) Id. at 630 (3). "Under the facts of this case, and considering the charge in its entirety, we find that the language of the charge was not coercive and that it did not place undue pressure on the members of the jury to abandon their convictions." (Punctuation and footnote omitted.) Id. at 631 (3).

---

[1] To the extent that Williams argues that the trial court should have considered juror affidavits on the issue whether the jurors were confused such that they rendered a guilty verdict when they should not have, such arguments are without merit. The trial court properly disregarded the juror affidavits, because "[t]he affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 17-9-41.

[2] *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

4. Williams argues that the trial court erred in admitting his videotaped statement to police because police did not follow the juvenile intake procedures outlined in OCGA § 15-11-47 (a)[3] before questioning him. We disagree.

The Supreme Court of Georgia has held that "the violation of the Juvenile Code [intake procedures] does not render [an] incriminating statement per se inadmissible." (Citation omitted.) *Hanifa v. State*, 269 Ga. 797, 805 (3) (505 SE2d 731) (1998). The relevant inquiry is not whether the intake procedures were followed to the letter before Williams's statement was taken, but whether Williams made a knowing and intelligent waiver of his constitutional rights when he gave the incriminating statement. Id. at 804-805 (3). To determine whether such a knowing and intelligent waiver took place, the court considers (1) the age of the accused, (2) his education, (3) his knowledge as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent, (4) whether the juvenile is held incommunicado or allowed to consult with relatives, friends or an attorney, (5) whether the juvenile was interrogated before or after formal charges had been filed, (6) the methods used in interrogations, (7) the length of interrogations, (8) whether the juvenile refused to voluntarily give statements on prior occasions, and (9) whether the juvenile has repudiated an extra judicial statement at a later date. *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976).

Here, the evidence at the *Jackson-Denno* hearing revealed that Williams was 15 years old at the time of the shooting and that police discussed with him the nature of the charges against him. Police read Williams his *Miranda* rights, and all questioning took place with Williams's mother present. Both Williams and his mother voluntarily signed a waiver of counsel form that explained Williams's *Miranda* rights prior to any questioning taking place. Williams averred that no threats, promises, tricks, or other forms of persuasion were used to induce him to sign the waiver form. The interview itself lasted only 15 or 20 minutes, and police did not employ any tactics to pressure or coerce Williams into giving a statement. Police ceased all questioning the moment that Williams's mother asked for an attorney. Under these circumstances, the trial court properly concluded that the

---

[3] OCGA § 15-11-47 (a) (3) and (4) provide that the person taking a child into custody shall "without first taking the child elsewhere . . . [b]ring the child immediately before the juvenile court or promptly contact a juvenile court intake officer . . . or [b]ring the child who is suspected of committing a delinquent act before the superior court of the county where the delinquent act occurred. . . ." It is undisputed that these predicate acts did not take place before Williams was taken into custody and questioned.

videotaped statement was made voluntarily and was therefore admissible. *Hanifa*, supra, 269 Ga. at 805 (3).

5. Williams argues that OCGA § 15-11-28 (b) (2) is unconstitutional as applied to him because the statute as written deprived him of due process and equal protection. Williams's arguments are essentially the same as those rejected by the Supreme Court of Georgia in *Bishop v. State*, 265 Ga. 821 (462 SE2d 716) (1995), wherein the Court declared the statute constitutional. See id. at 822-824 (2), (3) (declaring OCGA § 15-11-5, which is now OCGA § 15-11-28, constitutional on due process and equal protection grounds). Accordingly, the arguments raised by Williams here have no merit.

6. Williams contends that the trial court erred by increasing his sentence after he had already begun serving it. We agree.

The Supreme Court of Georgia has held that once a defendant begins serving his sentence, that sentence can only be increased through resentencing where "(a) such resentencing is allowed by law, and (b) the defendant has no reasonable expectation in the finality of the original sentence." *Wilford v. State*, 278 Ga. 718, 720 (606 SE2d 252) (2004). Absent these circumstances, the resentencing constitutes a double punishment that runs afoul of the Fifth Amendment prohibition against double jeopardy. See id.

For example, Georgia's First Offender Act (OCGA § 42-8-60 et seq.) specifically provides that a court may resentence a defendant who is originally sentenced as a first offender once it is discovered that he was not in fact entitled to first offender treatment at the time he was sentenced. See *Wilford*, supra, 278 Ga. at 720; see also OCGA § 42-8-60 (b) ("[U]pon the court determining that the defendant is or was not eligible for sentencing under [the First Offender Act], the court may enter an adjudication of guilt and proceed as otherwise provided by law."). Where a defendant lies to the court in order to receive first offender treatment, he further would have no reason to believe that the original sentence imposed was final. *Wilford*, supra, 278 Ga. at 720. Under such circumstances, a trial court would not err in increasing the defendant's sentence once he had already begun serving it. Id. at 721.

If the resentencing is not legislatively authorized or the defendant has a reasonable expectation in the finality of his sentence, the trial court may not increase the defendant's sentence once he has begun serving it. Specifically, if the Georgia Legislature had not made a specific pronouncement with respect to resentencing under the First Offender Act, or the defendant had had a reasonable expectation of finality in his original sentence, the trial court's increasing of the defendant's sentence once he began serving it would have constituted double jeopardy. See *Wilford*, supra, 278 Ga. at 721, n. 14 (trial court properly increased sentence of defendant who lied to court

to get first offender treatment, but such case holding "is intended to have application only with regard to those criminal defendants who are given treatment under the Georgia First Offender Act . . .").

Unlike the First Offender Act, the voluntary manslaughter statute at issue here does not specifically authorize the manner of resentencing imposed by the trial court in this case. Compare OCGA § 42-8-60 (b) with OCGA § 16-5-2 (b). Moreover, Williams had already begun serving his sentence at the time that the trial court increased his punishment from 15 years to 20 years. The original sentence was final at the time that it was imposed, and Williams had no reason to believe that it was otherwise. Thus, the trial court's increased sentence constituted double jeopardy and cannot stand. We therefore vacate the sentence and remand this case to the trial court for resentencing.

*Judgment of conviction affirmed, sentence vacated and case remanded for resentencing. Blackburn, P. J., and Bernes, J., concur.*

DECIDED APRIL 19, 2005.

*Sarah L. Gerwig, Amy Vosburg-Casey, Douglas B. Ammar, David F. Dorsey, Jr.,* for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney,* for appellee.