S08A0607. SENTENCE REVIEW PANEL et al. v. MOSELEY.

(663 SE2d 679)

CARLEY, Justice.

This appeal stems from the criminal prosecution of Sandra Widner for murder and possession of a firearm during commission of a crime. J. Brown Moseley, who was the District Attorney of the South Georgia Judicial Circuit at that time, entered into a plea agreement with Ms. Widner. Pursuant to that agreement, she pled guilty to the lesser charge of voluntary manslaughter in exchange for a recommended sentence of 15 years. The trial court accepted her plea and imposed the sentence. Immediately thereafter, Ms. Widner filed a petition with the Georgia Sentence Review Panel (Panel) and sought a reduction in her negotiated sentence. Despite the plea agreement, the Panel reduced her sentence to eight years.

Moseley filed suit against the Panel and its Administrator, the Commissioner of the Department of Corrections (Department), and the Chairman and individual members of the State Board of Pardons and Paroles (Board) (collectively referred to hereinafter as Appellants), seeking equitable relief against enforcement of the reduction of Ms. Widner's sentence. His complaint challenged the constitutionality of former OCGA § 17-10-6, which authorized the Panel to review and to reduce certain sentences imposed by the trial courts of this state. The trial court granted Appellants' motion to dismiss, concluding that Moseley lacked standing. On appeal, however, this Court reversed that ruling and remanded the case to the trial court for consideration of the merits of the constitutional challenge. *Moseley v. Sentence Review Panel*, 280 Ga. 646, 650 (3) (631 SE2d 704) (2006).

On remand, the trial court found that former OCGA § 17-10-6 was unconstitutional and, to effectuate that holding, it granted equitable relief against the enforcement of the Panel's reduction of Ms. Widner's sentence. Appellants appeal from that order of the trial court.

1. As of July 1, 2007, former OCGA § 17-10-6 was repealed, and OCGA § 17-10-6.3 came into effect. Ga. L. 2007, pp. 595, 596, §§ 2, 3. Subsection (b) of the new provision terminated the Panel's authority to review a sentence imposed after that effective date, but subsection (c) provides that the Panel has until November 1, 2008 to complete its review of all pending applications for sentence reduction. Thus, notwithstanding the repeal of former OCGA § 17-10-6, the Panel remains in existence and the question of the constitutionality of its authority to reduce sentences, such as Ms. Widner's, has not become moot by the enactment of OCGA § 17-10-6.3.

Turning to the merits of the constitutional challenge, "[t]he legislative, judicial, and executive powers shall forever remain separate and distinct . . . ." Ga. Const. of 1983, Art. I, Sec. II, Par. III. This provision distinguishes our state Constitution from the federal Constitution, which has no express provision "prohibit[ing] the officials of one branch of government from exercising the functions of the other branches." *State v. Phillips*, 521 NW2d 913, 916 (III) (Neb. 1994). Former OCGA § 17-10-6 did not simply create a commission with the authority to promulgate sentencing guidelines, which are then to be applied uniformly by the trial courts of this state. Compare *Mistretta v. United States*, 488 U. S. 361 (109 SC 647, 102 LE2d 714) (1989) (discussing the constitutionality of the Federal Sentencing Commission). Instead, that act created the Panel and invested it with "the authority to issue an order reducing the sentence originally imposed by the trial judge." Former OCGA § 17-10-6 (c). Thus, it is clear that the purpose of the statute was to establish a separate quasi-appellate court with jurisdiction to review certain sentences imposed by the trial courts and with the plenary authority to modify those sentences downward. Since the Panel has the actual power to change a criminal sentence, rather than the limited authority to promulgate sentencing guidelines for the trial courts to apply themselves, former OCGA § 17-10-6 conferred judicial power on that Panel.

However, the Constitution of this state provides, in relevant part, that "[t]he judicial power of the state shall be vested *exclusively* in the following classes of courts: magistrate courts, probate courts, juvenile courts, state courts, superior courts, Court of Appeals, and Supreme Court." (Emphasis supplied.) Ga. Const. of 1983, Art. VI, Sec. I, Par. I. This constitutional provision prohibits the "establish-[ment of] a separate judicial forum." *Smith v. Langford*, 271 Ga. 221,

224 (518 SE2d 884) (1999). Accordingly, the General Assembly cannot divest a Georgia court "of its constitutional jurisdiction. Any such legislative act violates the constitution and is of no avail." *Williams v. State*, 138 Ga. 168, 170 (74 SE 1083) (1912). Nevertheless, that is the unconstitutional effect of former OCGA § 17-10-6. With certain limited exceptions, that statute, by its terms, divested the trial courts of this state of their jurisdiction to impose a final sentence in a criminal case, whenever the defendant applied to the Panel for review and, "in the opinion of the [P]anel, the sentence imposed by the trial judge is too harsh or severe in light of all of the circumstances surrounding the case and the defendant, and in light of the defendant's past history . . . ." Former OCGA § 17-10-6 (c).

The dissent authored by Justice Benham relies on Art. VI, Sec. I, Par. VII of the Georgia Constitution of 1983, which authorizes the General Assembly to "abolish, create, consolidate, or modify judicial circuits and courts and judgeships . . . ." However, "constitutional provisions relating to the same subject matter must be construed together and harmonized if conflicts appear. [Cits.]" *Copeland v. State*, 268 Ga. 375, 377 (1) (490 SE2d 68) (1997). Thus, Art. VI, Sec. I, Par. VII must be construed in pari materia with Art. VI, Sec. I, Par. I. By vesting the judicial power of this state exclusively in certain enumerated classes of courts, Art. VI, Sec. I, Par. I necessarily prohibits the creation of an entirely new class of court or judicial forum. Accordingly, Art. VI, Sec. I, Par. VII must be read only as authorizing the creation of new courts within an existing class. Justice Benham also mistakenly relies on *Tax Assessors of Gordon County v. Chitwood*, 235 Ga. 147, 153-154 (218 SE2d 759) (1975). That decision construed a predecessor of Art. VI, Sec. I, Par. I which did not "exclusively" vest the judicial power of this state in certain classes of courts, but rather vested that power in certain enumerated courts and " 'such other courts as have been or may be established by law.' [Cits.]" *Tax Assessors of Gordon County v. Chitwood*, supra at 154. Instead of retaining that open-ended language, Art. VI, Sec. I, Par. I specifically authorizes only the establishment of municipal courts and the exercise of quasi-judicial powers by administrative agencies.

"[A]s a general proposition, . . . the legislature can not . . . diminish the jurisdiction of courts established by the constitution of this [s]tate." *Hines v. Etheridge*, 173 Ga. 870, 871 (1) (162 SE 113) (1931). Sentencing is "traditionally reserved for the trial court." *McClellan v. State*, 274 Ga. 819, 820 (1) (b) (561 SE2d 82) (2002). The General Assembly " 'has no constitutional power to construe or alter judgments.' [Cit.]" *Jenkins v. Jenkins*, 233 Ga. 902, 903 (1) (214 SE2d 368) (1975). Thus, the General Assembly does not have the constitutional authority to divest the trial courts of this state of their

traditional jurisdiction over sentencing, by creating a quasi-appellate tribunal to review and alter the otherwise lawful sentences imposed by those trial courts. However, in contravention of the Georgia Constitution, former OCGA § 17-10-6 "establish[ed] a separate judicial forum." *Smith v. Langford*, supra. Contrary to Justice Benham's dissent, the mere fact that the Panel is comprised of superior court judges cannot operate to confer constitutional power on those judges or to authorize the General Assembly to disregard the separation of powers by vesting judicial power in the Panel in direct violation of Art. VI, Sec. I, Par. I of the Georgia Constitution of 1983. See *Jones v. Boykin*, 185 Ga. 606, 609 (3) (196 SE 900) (1938). Compare *Moyers v. State*, 186 Ga. 446, 459 (2) (197 SE 846) (1938). "[N]either the legislature nor a judge, nor the judges of a superior court have authority to limit or expand the jurisdiction and authority of a superior court." *Fulton County v. Woodside*, 222 Ga. 90, 100 (2) (149 SE2d 140) (1966).

> "The attempt of the General Assembly, in the passage of the act referred to, is an invasion of the prerogative of the judiciary, which is not sanctioned by the constitution." [Cit.] The legislature may not, without express constitutional authority, abridge, restrict, or modify the jurisdiction and power of the judiciary. Consequently, [former OCGA § 17-10-6] is not binding . . . .

*Parks v. State*, 212 Ga. 433, 437 (3) (93 SE2d 663) (1956). See also *State v. Phillips*, supra (holding the Nebraska resentencing statute unconstitutional under the separation of powers clause of that state's constitution). Therefore, the trial court correctly concluded that that former statute was unconstitutional.

2. Appellants urge that, if the trial court correctly found former OCGA § 17-10-6 to be unconstitutional, it nevertheless erred by failing to give its ruling only prospective effect.

> The general rule is that an unconstitutional statute is wholly void and of no force and effect from the date it was enacted. This harsh rule is subject to exceptions, however, where, because of the nature of the statute and its previous application, unjust results would accrue to those who justifiably relied on it. [Cits.]

*Strickland v. Newton County*, 244 Ga. 54, 55 (1) (258 SE2d 132) (1979).

Neither the Department nor the Board ever placed any direct reliance on former OCGA § 17-10-6, since they never had any

occasion to invoke the provisions of that statute. Instead, the official duty of both of those entities is, and always has been, simply to implement enforcement of the lawful sentences imposed on those who have been convicted of crimes in this state. However, Ms. Widner did invoke the provisions of the former statute, by successfully petitioning the Panel for a reduction in her sentence. The trial court made its order specifically applicable to her and, by implication, also retroactively applicable to all other defendants who, like she, previously applied to the Panel and were granted reduced sentences. Thus, the question is whether the trial court erred in giving its ruling retroactive effect as to Ms. Widner and similarly situated defendants.

Former OCGA § 17-10-6 (d) provided:

> The reduction of [Ms. Widner's] sentence . . . by the [P]anel shall not be reviewable. . . . [The] order issued by the [P]anel reducing . . . [her] sentence covered by [the] application shall be binding on [her] and the superior court which imposed the sentence.

In accordance with this provision, the Panel's action on Ms. Widner's application established with seeming finality that she would only be required to serve an eight-year term, rather than the fifteen-year sentence imposed by the trial court. See *Benefield v. State of Ga.*, 276 Ga. 100, 101-102 (2) (575 SE2d 453) (2003) (holding that, "as long as the sentence is one which is otherwise 'covered by an application,' a Panel decision is totally insulated from a trial court's claim of reinvested subject matter jurisdiction over the question of punishment"). Therefore, making today's decision retroactively effective as to her would result in the imposition of a greater sentence than the one she is currently serving. However, once a defendant has begun to serve a sentence, the constitutional principle of double jeopardy precludes an increase in punishment, unless "(a) such resentencing is allowed by law, and (b) the defendant has no reasonable expectation in the finality of the original sentence [being served]. [Cit.]" *Wilford v. State*, 278 Ga. 718, 720 (606 SE2d 252) (2004). "Absent these circumstances, the resentencing constitutes a double punishment that runs afoul of the Fifth Amendment prohibition against double jeopardy. [Cit.]" *Williams v. State*, 273 Ga. App. 42, 46 (6) (614 SE2d 146) (2005).

This exception to double jeopardy as a bar against resentencing to greater punishment applies when

> the legislature has provided that a sentence, once imposed, is subject to appeal and/or subsequent modification, [in

which case] it is not considered final or absolute. In those circumstances, "the guarantee against multiple punishment" at the core of double jeopardy protections is not implicated. [Cit.] Simply put, "the double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence (that is) statutorily permissible." [Cit.]

*Wilford v. State*, supra. This circumstance does not exist here, since the General Assembly did not provide that a sentence reduced by the Panel would be subject to appeal or subsequent modification. Compare *Wilford v. State*, supra (applying OCGA § 42-8-60 (b), which expressly provides that, in the event that a defendant was improperly allowed first offender treatment, the trial court is authorized to "enter an adjudication of guilt and proceed as otherwise provided by law"). To the contrary, as previously noted, former OCGA § 17-10-6 (d) insulated the Panel's action from subsequent review or modification. Thus, resentencing after a reduction of sentence by the Panel was not allowed by law, but was, in fact, expressly prohibited.

With the benefit of hindsight, it is now apparent that the reduction of Ms. Widner's sentence was accomplished by the Panel's exercise of unconstitutional authority. However, at the time that the Panel acted, she was justified in relying on the finality of her reduced sentence. It was not until Moseley initiated this action that the question of the constitutionality of the Panel's authority was first raised, and the ruling that former OCGA § 17-10-6 is unconstitutional " 'decid(ed) an issue of first impression whose resolution was not clearly foreshadowed.' [Cit.]" *Lemon v. Kurtzman*, 411 U. S. 192, 206 (4) (93 SC 1463, 36 LE2d 151) (1973). Thus, "this is not a case where it could be said that [Ms. Widner and other defendants who have previously invoked the Panel's statutory authority] acted in bad faith or that they relied on a plainly unlawful statute." *Lemon v. Kurtzman*, supra at 207 (4). They were "entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Lemon v. Kurtzman*, supra at 209 (5).

Therefore, the principle of double jeopardy requires that the ruling as to the unconstitutionality of former OCGA § 17-10-6 be applied prospectively only. See *Bouie v. City of Columbia*, 378 U. S. 347, 354 (84 SC 1697, 12 LE2d 894) (1964) ("If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. [Cit.]"). The unconstitutionality of former OCGA § 17-10-6 cannot be rectified by an unconstitutional application of today's opinion to Ms. Widner and those defendants who are currently serving sentences reduced by the

Panel. "If the resentencing is not legislatively authorized or the defendant has a reasonable expectation in the finality of his sentence, the . . . court[s] may not increase the defendant's sentence once he has begun serving it." *Williams v. State*, supra. The reductions in sentences were "final at the time that [they were approved by the Panel], and [Ms. Widner and similarly situated defendants] had no reason to believe that it was otherwise." *Williams v. State*, supra at 47 (6).

Therefore, the judgment of the trial court is affirmed as to the unconstitutionality of former OCGA § 17-10-6, but reversed insofar as it is made retroactively applicable to Ms. Widner and to any defendant who, like she, may have applied and been granted a reduction in sentence by the Panel.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Sears, C. J., who concurs in part and dissents in part, and Hunstein, P. J., and Benham, J., who dissent.*

SEARS, Chief Justice, concurring in part and dissenting in part.

I concur fully with the Court's holding in Division 2 that even if the trial court's conclusion regarding the constitutionality of former OCGA § 17-10-6 were correct, the trial court erred in vacating the three-judge Sentence Review Panel's reduction of Widner's sentence. Incredibly, the trial court made this decision in a proceeding to which Widner was not a party and of which she had no notice whatsoever, much less an opportunity to be heard before her lengthy prison sentence of eight years, which she had nearly completed serving, was suddenly extended by an additional seven years. The trial court's decision not only violated the constitutional prohibition against double jeopardy, but also arose from a legal proceeding lacking the most rudimentary elements of due process of law. Accordingly, the Court is correct to reverse the trial court's unconstitutional augmentation of Widner's criminal sentence. In addition, I agree with the Court's holding that double jeopardy bars the retroactive application of today's decision striking down former OCGA § 17-10-6 to any other defendant who, like Widner, has already been granted a reduction in sentence by the Panel.

The Court's resolution of the double jeopardy issue in Division 2 raises a serious question regarding this Court's continuing jurisdiction to address the constitutional issue decided in Division 1. In light of the holding in Division 2, the practical effect of Division 1 is that from this day forward, the Panel will no longer be able to reduce criminal sentences. It is unclear, however, that the Court's decision will affect a single case other than Widner's. Last year, the General Assembly adopted legislation repealing OCGA § 17-10-6, the statute

that created the three-judge Sentence Review Panel.[1] In the same enactment, the General Assembly adopted a new statute providing for the winding up of the Panel and the disposition of all pending matters.

The new OCGA § 17-10-6.3 (a) reads as follows:

> As used in this Code section, the term "three-judge panel" means the three-judge panel that was created and existed pursuant to the former provisions of Code Section 17-10-6 as it existed on June 30, 2007, which reviewed certain sentences to determine if a sentence was excessively harsh and what relief, if any, should be given.

The new statute terminated the right of Panel review for any sentence imposed after June 30, 2007, and barred transmission of new sentence review applications to the Panel on or after July 1, 2007, for any sentence imposed after that date.[2] The Panel's authority to accept applications for review terminated on September 1, 2007.[3] It is true that OCGA § 17-10-6.3 (c) set an outside deadline of November 1, 2008, for the Panel to complete its review of all pending matters. However, by now, the Panel should have long ago completed its review of all cases entitled to review due to the strict timetable contained in former OCGA § 17-10-6 and the Rules for the Superior Courts Sentence Review Panel of Georgia (Panel Rules).

Former OCGA § 17-10-6 (b) required the Panel to "meet at the state capital at such times as may be required for the review of sentences, provided that all applications for review of sentences shall be heard *within three months* from the date on which they are *filed*." (Emphasis supplied.) In a similar vein, Rule 47 of the Panel Rules provided (and still provides) in relevant part as follows:

> The Superior Courts Sentence Review Panel *shall be in continuous session* and shall meet at such times as may be necessary *to dispose of all cases within 90 days* after they are ripe for consideration. . . . A case shall be considered ripe for consideration if the 15 days for submission of written argument have elapsed and all documents pertinent to the review of the case have been received.

---

[1] 2007 Ga. Laws 595.

[2] OCGA § 17-10-6.3 (b).

[3] OCGA § 17-10-6.3 (c).

(Emphasis supplied.)[4]

As noted above, the last day the Panel could accept a new sentence review application was nine months ago, on September 1, 2007. The last possible deadline for submitting written argument on an application was 15 days later, on September 16, 2007. Assuming all pertinent documents were received by the Panel by that date, the Panel should have completed its review and issued final orders in all cases in the pipeline sometime within the next 90 days. In other words, under the statutory timetable, the Panel's last order reducing a sentence would have been issued at the very latest by December 15, 2007. Indulging the presumption of regularity,[5] I would not assume, absent evidence to the contrary, that the judges assigned to the Panel have shirked their statutory duty and failed to dispose of all matters eligible for review by December 15, 2007.

Given the Court's express holding in Division 2 that it would violate double jeopardy to apply the holding in Division 1 to any of those cases, and the fact that there will be no other cases due to the General Assembly's repeal of former OCGA § 17-10-6, it would appear to be unnecessary at this time for us to resolve the weighty constitutional issue addressed in Division 1 of the majority opinion. Consequently, I would go no further in this case than to decide the issue presented by Division 2, and I would decline the former district attorney's invitation to issue what may well be an advisory opinion on the constitutionality of a statute that the General Assembly repealed almost a year ago. The proper course would be to reverse the trial court's ruling regarding Widner, vacate its constitutional holding invalidating former OCGA § 17-10-6, and either dismiss the appeal outright or remand the case to the trial court with direction to conduct further proceedings on whether it has now become moot due to the passage of time. Accordingly, I dissent from Division 1 of the majority opinion.

BENHAM, Justice, dissenting.

I respectfully dissent from Division 1 of the majority opinion because I disagree that former OCGA § 17-10-6 was unconstitutional. First, the majority opinion ignores the fact that our constitu-

---

[4] See Panel Rules, Rule 39 ("Applicant and district attorney shall have the right to submit only written argument relative to the sentence imposed and the harshness or justification thereof. Said argument shall be postmarked to the Panel within 15 days of the docketing date.").

[5] See *Allen v. Thomas*, 225 Ga. 650, 652 (171 SE2d 132) (1969) ("There is a legal presumption, until the contrary appears, that a public officer has regularly and properly performed his [or her] official duty."). See also *Bracy v. Gramley*, 520 U. S. 899, 909 (117 SC 1793, 138 LE2d 97) (1997) ("Ordinarily, we presume that public officials have properly discharged their official duties.") (punctuation omitted).

tion expressly authorizes the General Assembly to "abolish, *create*, consolidate, or modify . . . courts. . . ." (Emphasis supplied.) Ga. Const. of 1983, Art. VI, Sec. I, Par. VII. See also Ga. Const. of 1983, Art. VI, Sec. I, Par. I ("the General Assembly . . . may authorize administrative agencies to exercise quasi-judicial powers"); *Tax Assessors of Gordon County v. Chitwood*, 235 Ga. 147, 153-154 (218 SE2d 759) (1975) (the General Assembly may create tribunals for special purposes). Thus, the legislature had the authority to enact the legislation which created the Sentence Review Panel.

I also disagree with the majority opinion's stance that the enactment of former OCGA § 17-10-6 and the existence and operation of the Panel violated our constitution's mandate which provides: "[t]he legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." Ga. Const. of 1983, Art. I, Sec. II, Par. III. While the General Assembly created the Panel and its basic statutory framework, the Panel itself was comprised of superior court judges who were appointed for service by the President of the Council of Superior Court Judges. It is these appointed superior court judges who made decisions regarding the sentences handed down by their peers. In addition, the Panel functioned independently of the legislature, having its own budget, a clerk, and staff to facilitate its duties. Thus the implication made by the majority's opinion that OCGA § 17-10-6 allowed the legislature and legislators to have powers, discharge duties, or perform functions deemed to be "judicial," including review and modification of sentences issued by superior court judges, is unfounded. The legislature's mere creation and authorization of the Panel did not infringe upon the function of the judicial branch in violation of our constitution. *Ga. Dept. of Human Resources v. Word*, 265 Ga. 461 (1) (458 SE2d 110) (1995) ("the legislature may invoke the action of the judicial branch so long as it does not assume the constitutional 'field of action' of that branch").

Accordingly, I would reverse the trial court's decision in its entirety. I am authorized to state that Presiding Justice Hunstein joins this dissent.

DECIDED JULY 7, 2008.

*Gray, Hedrick & Edenfield, Bruce M. Edenfield, Susan L. Rutherford, Thurbert E. Baker, Attorney General, Mary Beth West-moreland, Deputy Attorney General, Joseph J. Drolet, Senior Assistant Attorney General*, for appellant.

*Hall, Booth, Smith & Slover, J. Brown Moseley*, pro se.
*Gerald R. Weber, Jr., Sarah E. Geraghty, Kilpatrick Stockton, Curtis A. Garrett, Jr., Hayley R. Ambler, Patrick H. Head*, District Attorney, *Dana J. Norman*, Assistant District Attorney, amici curiae.